CORTEZ BYRD CHIPS, INC. *v.* BILL HARBERT
CONSTRUCTION CO., A DIVISION OF BILL
HARBERT INTERNATIONAL, INC.

No. 98–1960.   Argued January 10, 2000—Decided March 21, 2000

SOUTER, J., delivered the opinion for a unanimous Court.

*Daniel H. Bromberg* argued the cause for petitioner. With him on the briefs were *John L. Maxey II* and *John F. Hawkins.*

*Susan S. Wagner* argued the cause for respondent. With her on the brief was *Edward P. Meyerson.*

JUSTICE SOUTER delivered the opinion of the Court.

This case raises the issue whether the venue provisions of the Federal Arbitration Act (FAA or Act), 9 U. S. C. §§ 9–11, are restrictive, allowing a motion to confirm, vacate, or modify an arbitration award to be brought only in the district in which the award was made, or are permissive, permitting such a motion either where the award was made or in any district proper under the general venue statute. We hold the FAA provisions permissive.

I

Petitioner Cortez Byrd Chips, Inc., and respondent Bill Harbert Construction Company agreed that Harbert would build a wood chip mill for Cortez Byrd in Brookhaven, Mississippi. One of the terms was that "[a]ll claims or disputes between the Contractor and the Owner arising out [of] or relating to the Contract, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise." App. 52. The agreement went on to provide that "[t]he award rendered by the arbitrator or arbitrators shall be final, and judgement may be entered upon it in accordance with applicable law in any court having jurisdiction thereof," *ibid.;* that the agreement to arbitrate "shall be specifically enforceable under applicable law in any court having jurisdiction thereof," *ibid.;* and that the law of the place where the project was located, Mississippi, governed, *id.*, at 60; 169 F. 3d 693, 694 (CA11 1999).

After a dispute arose, Harbert invoked the agreement by a filing with the Atlanta office of the American Arbitration Association, which conducted arbitration in November 1997

in Birmingham, Alabama. The next month, the arbitration panel issued an award in favor of Harbert. *Ibid.*

In January 1998, Cortez Byrd filed a complaint in the United States District Court for the Southern District of Mississippi seeking to vacate or modify the arbitration award, which Harbert then sought to confirm by filing this action seven days later in the Northern District of Alabama. When Cortez Byrd moved to dismiss, transfer, or stay the Alabama action, the Alabama District Court denied the motion, concluding that venue was proper only in the Northern District of Alabama, and entering judgment for Harbert for $274,256.90 plus interest and costs. *Ibid.*

The Court of Appeals for the Eleventh Circuit affirmed. It held itself bound by pre-1981 Fifth Circuit precedent, cf. *Bonner* v. *Prichard,* 661 F. 2d 1206, 1209 (CA11 1981), to the effect that under the Act's venue provisions, 9 U. S. C. §§ 9–11, venue for motions to confirm, vacate, or modify awards was exclusively in the district in which the arbitration award was made. 169 F. 3d, at 694; *Naples* v. *Prepakt Concrete Co.,* 490 F. 2d 182, 184 (CA5), cert. denied, 419 U. S. 843 (1974). The arbitration here having been held in Birmingham, the rule as so construed limited venue to the Northern District of Alabama.

We granted certiorari, 527 U. S. 1062 (1999), to resolve a split among the Courts of Appeals over the permissive or mandatory character of the FAA's venue provisions. Compare *In re VMS Securities Litigation,* 21 F. 3d 139, 144–145 (CA7 1994) (§§ 9 and 10 permissive); *Smiga* v. *Dean Witter Reynolds, Inc.,* 766 F. 2d 698, 706 (CA2 1985), cert. denied, 475 U. S. 1067 (1986) (§ 9 permissive); *Sutter Corp.* v. *P & P Indus., Inc.,* 125 F. 3d 914, 918–920 (CA5 1997) (§§ 9 and 10 permissive); *P & P Indus., Inc.* v. *Sutter Corp.,* 179 F. 3d 861, 869–870 (CA10 1999) (§§ 9 and 10 permissive); *Apex Plumbing Supply, Inc.* v. *U. S. Supply Co.,* 142 F. 3d 188, 192 (CA4 1998) (§ 9 permissive); *Nordin* v. *Nutri/System, Inc.,* 897 F. 2d 339, 344 (CA8 1990) (§ 9 permissive), with *Central*

*Valley Typographical Union No. 46* v. *McClatchy Newspapers*, 762 F. 2d 741, 744 (CA9 1985) (§ 10 mandatory); *Island Creek Coal Sales Co.* v. *Gainesville*, 729 F. 2d 1046, 1049–1050 (CA6 1984) (§ 9 mandatory); *Sunshine Beauty Supplies, Inc.* v. *United States District Court, Central Dist. of Cal.*, 872 F. 2d 310, 312 (CA9 1989) (§§ 9 and 10 mandatory); *United States ex rel. Chicago Bridge & Iron Co.* v. *Ets-Hokin Corp.*, 397 F. 2d 935, 939 (CA9 1968) (§ 10 mandatory).   We reverse.

## II

Section 9 of the FAA governs venue for the confirmation of arbitration awards:

> "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.   If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."   9 U. S. C. § 9.

Section 10(a), governing motions to vacate arbitration awards, provides that

> "the United States court in and for the district wherein the [arbitration] award was made may make an order vacating the award upon the application of any party to the arbitration [in any of five enumerated situations]."

And under § 11, on modification or correction,

> "the United States court in and for the district wherein the award was made may make an order modifying or

correcting the award upon the application of any party to the arbitration."

The precise issue raised in the District Court was whether venue for Cortez Byrd's motion under §§ 10 and 11 was properly laid in the southern district of Mississippi, within which the contract was performed. It was clearly proper under the general venue statute, which provides, among other things, for venue in a diversity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U. S. C. § 1391(a)(2). If §§ 10 and 11 are permissive and thus supplement, but do not supplant, the general provision, Cortez Byrd's motion to vacate or modify was properly filed in Mississippi, and under principles of deference to the court of first filing, the Alabama court should have considered staying its hand. Cf. *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co.,* 342 U. S. 180, 185 (1952); *Landis* v. *North American Co.,* 299 U. S. 248, 254 (1936); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1360 (1990). But if §§ 10 and 11 are restrictive, there was no Mississippi venue for Cortez Byrd's action, and the Northern District of Alabama correctly proceeded with the litigation to confirm. Although § 9 is not directly implicated in this action, since venue for Harbert's motion to confirm was proper in the northern district of Alabama under either a restrictive or a permissive reading of § 9, the three venue sections of the FAA are best analyzed together, owing to their contemporaneous enactment and the similarity of their pertinent language.

Enlightenment will not come merely from parsing the language, which is less clear than either party contends. Although "may" could be read as permissive in each section, as Cortez Byrd argues, the mere use of "may" is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority. *United States* v. *Rodgers,* 461 U. S. 677, 706 (1983) ("The word 'may,' when used in a stat-

ute, usually implies some degree of discretion[, but] [t]his common-sense principle of statutory construction . . . can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute" (footnote and citations omitted)); *Citizens & Southern Nat. Bank* v. *Bougas*, 434 U. S. 35, 38 (1977). Certainly the warning flag is up in this instance. While Cortez Byrd points to clearly mandatory language in other parts of the Act as some indication that "may" was used in a permissive sense, cf. 9 U. S. C. §§ 2, 12, Harbert calls attention to a contrary clue in even more obviously permissive language elsewhere in the Act. See § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . ." [1]). Each party has a point, but neither point is conclusive. The answer is not to be had from comparing phrases.

Statutory history provides a better lesson, though, which is confirmed by following out the practical consequences of Harbert's position. When the FAA was enacted in 1925, it appeared against the backdrop of a considerably more restrictive general venue statute than the one current today. At the time, the practical effect of 28 U. S. C. § 112(a) was that a civil suit could usually be brought only in the district in which the defendant resided. See 28 U. S. C. § 112(a) (1926 ed.).[2] The statute's restrictive application was all the

---

[1] The original version of § 4 referred to "the judicial code at law," rather than Title 28. See United States Arbitration Act, 43 Stat. 883.

[2] "[E]xcept as provided in sections 113 to 118 of this title, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 28 U. S. C. § 112(a) (1926 ed.). The provision allowing suits in a diversity action in the district in which the plaintiff resided was of limited effect,

more pronounced due to the courts' general inhospitality to forum selection clauses, see *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1, 9–10 (1972). Hence, even if an arbitration agreement expressly permitted action to be brought in the district in which arbitration had been conducted, the agreement would probably prove to be vain. The enactment of the special venue provisions in the FAA thus had an obviously liberalizing effect, undiminished by any suggestion, textual or otherwise, that Congress meant simultaneously to foreclose a suit where the defendant resided. Such a consequence would have been as inexplicable in 1925 as it would be passing strange 75 years later. The most convenient forum for a defendant is normally the forum of residence, and it would take a very powerful reason ever to suggest that Congress would have meant to eliminate that venue for postarbitration disputes.

The virtue of the liberalizing nonrestrictive view of the provisions for venue in the district of arbitration is confirmed by another obviously liberalizing venue provision of the Act, which in § 9 authorizes a binding agreement selecting a forum for confirming an arbitration award. Since any forum selection agreement must coexist with §§ 10 and 11, one needs to ask how they would work together if §§ 10 and 11 meant that an order vacating or modifying an arbitration award could be obtained only in the district where the award was made. The consequence would be that a proceeding to confirm the award begun in a forum previously selected by agreement of the parties (but outside the district of the arbitration) would need to be held in abeyance if the responding party objected. The objecting party would then have to return to the district of the arbitration to begin a separate

---

as restrictive views of personal jurisdiction meant that it was often difficult to sue a defendant outside the district of his residence. Cf. *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945) (requiring that a defendant have minimum contacts with a forum to be subject to its judgment).

proceeding to modify or vacate the arbitration award, and if the award withstood attack, the parties would move back to the previously selected forum for the confirming order originally sought.   Harbert, naturally, is far from endorsing anything of the sort and contends that a court with venue to confirm under a §9 forum selection clause would also have venue under a later filed motion under §10.   But the contention boils down to denying the logic of Harbert's own position.   The regime we have described would follow from adopting that position, and the Congress simply cannot be tagged with such a taste for the bizarre.

Nothing, indeed, would be more clearly at odds with both the FAA's "statutory policy of rapid and unobstructed enforcement of arbitration agreements," *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 23 (1983), or with the desired flexibility of parties in choosing a site for arbitration.   Although the location of the arbitration may well be the residence of one of the parties, or have some other connection to a contract at issue, in many cases the site will have no relation whatsoever to the parties or the dispute.   The parties may be willing to arbitrate in an inconvenient forum, say, for the convenience of the arbitrators, or to get a panel with special knowledge or experience, or as part of some compromise, but they might well be less willing to pick such a location if any future court proceedings had to be held there.   Flexibility to make such practical choices, then, could well be inhibited by a venue rule mandating the same inconvenient venue if someone later sought to vacate or modify the award.

A restrictive interpretation would also place §3 and §§9–11 of the FAA in needless tension, which could be resolved only by disrupting existing precedent of this Court. Section 3 provides that any court in which an action "referable to arbitration under an agreement in writing" is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accord-

ance with the terms of the agreement." 9 U. S. C. § 3. If an arbitration were then held outside the district of that litigation, under a restrictive reading of §§ 9–11 a subsequent proceeding to confirm, modify, or set aside the arbitration award could not be brought in the district of the original litigation (unless that also happened to be the chosen venue in a forum selection agreement). We have, however, previously held that the court with the power to stay the action under § 3 has the further power to confirm any ensuing arbitration award. *Marine Transit Corp.* v. *Dreyfus,* 284 U. S. 263, 275–276 (1932) ("We do not conceive it to be open to question that, where the court has authority under the statute . . . to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, *ultra vires* or other defect"). Harbert in effect concedes this point, acknowledging that "the court entering a stay order under § 3 retains jurisdiction over the proceeding and does not 'lose venue.'" Brief for Respondent 29. But that concession saving our precedent still fails to explain why Congress would have wanted to allow venue liberally where motions to confirm, vacate, or modify were brought as subsequent stages of actions antedating the arbitration, but would have wanted a different rule when arbitration was not preceded by a suit between the parties.

Finally, Harbert's interpretation would create anomalous results in the aftermath of arbitrations held abroad. Sections 204, 207, and 302 of the FAA together provide for liberal choice of venue for actions to confirm awards subject to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the 1975 Inter-American Convention on International Commercial Arbitration.[3] 9

---

[3] Section 204 provides for venue in actions under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards "in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy . . . could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration." Section 207 states that "any party

U. S. C. §§ 204, 207, 302. But reading §§ 9–11 to restrict venue to the site of the arbitration would preclude any action under the FAA in courts of the United States to confirm, modify, or vacate awards rendered in foreign arbitrations not covered by either convention. Cf. 4 I. MacNeil, R. Speidel, & T. Stipanowich, Federal Arbitration Law § 44.9.1.8 (1995) (discussing difficulties in enforcing foreign arbitrations held in nonsignatory states). Although such actions would not necessarily be barred for lack of jurisdiction, they would be defeated by restrictions on venue, and anomalies like that are to be avoided when they can be. True, "[t]here have been, and perhaps there still are, occasional gaps in the venue laws, [but] Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other. Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap." *Brunette Machine Works, Ltd.* v. *Kockum Industries, Inc.*, 406 U. S. 706, 710, n. 8 (1972); cf. *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 516–517 (1974) (noting that "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is . . . an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction," and that "[a] parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages").

Attention to practical consequences thus points away from the restrictive reading of §§ 9–11 and confirms the view that the liberalizing effect of the provisions in the day of their enactment was meant to endure through treating them as

to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award." Section 302 applies these provisions to actions brought under the Inter-American Convention. Sections 204 and 207 were added to the FAA in 1970; § 302 was added in 1990.

permitting, not limiting, venue choice today. As against this reasoning, specific to the history and function of a statute addressing venue where arbitration is concerned, Harbert's citations of cases construing other special venue provisions are beside the point. We found, for example, that Congress had a restrictive intent as to venue in patent cases, see *Fourco Glass Co.* v. *Transmirra Products Corp.*, 353 U. S. 222, 227–228 (1957); *Stonite Products Co.* v. *Melvin Lloyd Co.*, 315 U. S. 561, 565–566 (1942), a restrictive intent for the sake of protecting national banks when dealing with venue for litigation against them, see *Citizens & Southern Nat. Bank* v. *Bougas*, 434 U. S., at 44, and a restrictive intent as to the geographic reach of Title VII, as evidenced by the lack of extraterritorial venue and other enforcement mechanisms in the statute, see *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 256 (1991). But the authority of these cases is not that special venue statutes are deemed to be restrictive; they simply show that analysis of special venue provisions must be specific to the statute. With that we agree in holding the permissive view of FAA venue provisions entitled to prevail.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*