Steven ROTH, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA
COURTS, Defendant.

No. CIV. A. 99–3361(EGS).

United States District Court,
District of Columbia.

Aug. 22, 2001.

Steven Gary Polin, Washington, DC, Gary M. Sidell, Washington, DC, for plaintiffs.

Jack M. Simmons, III, Office of Coroporation Counsel, D.C., Washington, DC, for defendant.

## MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

Plaintiffs, three attorneys and one investigator, provide legal and litigation support services for the District of Columbia's indigent criminal defendants under the Criminal Justice Act, D.C.Code § 11–2601 *et seq.* ("CJA"). Plaintiffs seek relief under the Prompt Payment Act, 31 U.S.C. § 3901 *et seq.* ("PPA"), for interest on services rendered under the CJA. Defendant, District of Columbia Courts,[1] moves to dismiss the complaint or, in the alternative, for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(c). Upon consideration of defendant's motion, the opposition thereto, the statutes, relevant case law and the arguments in open court, defendant's motion to dismiss is granted.

## I. BACKGROUND

As originally enacted, the PPA requires federal agencies, the Tennessee Valley Authority, and the United States Postal Service to pay for any property or services acquired by the due date or within thirty days, unless the contract specifies otherwise. 31 U.S.C. § 3901 *et seq.* The thirty-day period begins on the later of the date of receipt of a proper invoice or the seventh day after the property is delivered or the service performance is completed. *See* § 3901(a)(4)(A). If a payment is not timely, interest accrues and is computed at a rate determined by the Secretary of the Treasury under the Contracts Dispute Act, 41 U.S.C. § 611. *See* § 3902(a). Claims for PPA interest are filed under Chapter 6

---

1. Plaintiffs sued an entity called the "District of Columbia Courts." In its Complaint, plaintiffs define defendant as "comprised of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals, and is the local court system for the District of Columbia. Defendant was created by an act of Congress in the District of Columbia Self–Government and Governmental Reorganization Act." Throughout the complaint, plaintiffs refer to the District of Columbia Courts in the singular as if it was an entity. This Court will also refer to defendant and the "District of Columbia Courts" in the singular to avoid confusion.

of the Contracts Disputes Act, 41 U.S.C. § 605, with the board of contract appeals for the individual federal entity. *See* § 3906.

In 1998, Congress amended the PPA to include late payment on a proper invoice made to the District of Columbia Courts. *See* 31 U.S.C. § 3901(d)(1) (1999 Supp.), Title I, § 162, P.L. 105–277, 1998 U.S.C.C.A.N. 2681–148. The PPA excludes the District of Columbia Courts from the claims procedures for federal entities, stating that a "claim for an interest penalty not paid under [31 U.S.C. § 3901 *et seq.*] *may* be filed in the same manner as claims are filed with respect to contracts to provide property or services for the District of Columbia Courts." § 3901(d)(2)(emphasis added).

The Superior Court of the District of Columbia ("Superior Court") and the District of Columbia Court of Appeals ("Court of Appeals"), in accordance with D.C.Code § 11–2601 *et seq.*, are required to furnish representation to any person in the District of Columbia who is financially unable to obtain legal representation. An attorney appointed to represent an indigent defendant is compensated at a fixed hourly rate and may also obtain investigative services. An attorney or investigator seeking compensation for her representation of in-

digent defendants is required to submit a claim for compensation to the appropriate court. The appointing judge then approves a voucher for payment.

Plaintiffs have, pursuant to their appointments for legal representation and investigative services on behalf of indigent defendants, submitted vouchers for compensation that were allegedly not paid within thirty days of submission. Plaintiffs have made written demands for payment of interest under 31 U.S.C. § 3901 *et seq.* The acting Fiscal Officer replied to plaintiffs' requests stating that the thirty-day payment time period does not begin to run until a judicial officer approves an individual CJA voucher. Former Chief Judge of the Superior Court, Eugene Nolan Hamilton, also stated in a memorandum that "with regard to Criminal Justice Act ... vouchers, it has been determined that the date the Court receives a 'proper invoice' is the date the authorizing Judge or Hearing Commissioner approves the voucher." Defendant, in its answer, admits that "interest does not begin to accrue until thirty (30) days after judicial approval of the claims."

Plaintiffs allege that defendant's failure to pay interest and penalties on CJA claims, filed between July 7, 1999[2] and February 20, 2001,[3] violated the PPA.

---

2. The earliest voucher submitted by plaintiff appears to have been submitted on July 7, 1999.

3. Congress added the following language to an appropriations bill:

Prompt Payment of Appointed Counsel

(a) ASSESSMENT OF INTEREST FOR DELAYED PAYMENTS.—If the Superior Court of the District of Columbia or the District of Columbia Court of Appeals does not make a payment described in subsection (b) prior to the expiration of the 45–day period which begins on the date the Court receives a completed voucher for a claim for the payment, interest shall be assessed against the amount

of the payment which would otherwise be made to take into account the period which begins on the day after the expiration of such 45–day period and which ends on the day the Court makes the payment.

(b) PAYMENTS DESCRIBED.—A payment described in this subsection is—

(1) a payment authorized under section 11–2604 and section 11–2605, D.C.Code (relating to representation provided under the District of Columbia Criminal Justice Act);

(2) a payment for counsel appointed in proceedings in the Family Division of the Superior Court of the District of Columbia under chapter 23 of title 16, D.C.Code; or

They seek a declaratory judgment that claims for compensation submitted under the Criminal Justice Act are deemed received, not on the date of judicial approval, but on the later of either (1) actual receipt by the defendant of a completed claim or (2) on the seventh day after the performance of legal services is actually completed. They also seek an order requiring defendant to pay to plaintiffs interest on all claims referenced in the complaint.

## II.  ANALYSIS

■ Defendant moves to dismiss the complaint arguing that 1) the Court lacks subject-matter jurisdiction for various reasons; 2) this Court lacks personal jurisdiction because the named defendant is *non sui juris;* and 3) the PPA does not apply to the types of claims at issue here.[4] "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). The Court need not address these jurisdictional questions in a particular order. *See id.* The Court will address the subject-matter jurisdiction issue first, as it is the most efficient way to resolve the issues in this case. The Court concludes that it does not have subject-matter jurisdiction over any claims for interest. The Court does, however, have jurisdiction over an action for declaratory relief. Notwithstanding, the Court declines to exercise its discretion to entertain the suit for declaratory relief. Thus, this Court need not address the personal jurisdiction issue, namely, whether the District of Columbia Courts, which is comprised of the Superior Court and the Court of Appeals, is *sui juris* and, as such, able to sue and be sued, *eo nomine.*

### A.  *Subject–Matter jurisdiction*

The Court must address two issues to determine whether it has subject-matter jurisdiction over plaintiffs' claims. First, whether the issues to be decided involve a federal question, invoking jurisdiction un-

(3) a payment for counsel authorized under section 21–2060, D.C.Code (relating to representation provided under the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986).
(c) STANDARDS FOR SUBMISSION OF COMPLETED VOUCHERS.—The chief judges of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals shall establish standards and criteria for determining whether vouchers submitted for claims for payments described in subsection (b) are complete, and shall publish and make such standards and criteria available to attorneys who practice before such Courts.
(d) RULE OF CONSTRUCTION.—Nothing in this section shall be construed to require the assessment of interest against any claim (or portion of any claim) which is denied by the Court involved.
(e) EFFECTIVE DATE.—This section shall apply with respect to claims received by the Superior Court of the District of Columbia or the District of Columbia Court of Appeals after the expiration of the 90–day period which begins on the date of the enactment of this Act.
District of Columbia Appropriations Act, 2001, § 149 P.L. 106–522, 114 Stat. 2440 (2000). Accordingly, the parties are in agreement that there is no dispute with respect to any vouchers submitted after February 20, 2001.

4. The Court finds it curious that defendant's answer states that "interest does not begin to accrue until thirty (30) days after judicial approval of the claims." This assertion implies that the defendant has admitted that these type of claims are eligible for PPA interest. Yet, in its dispositive motion and response to plaintiffs' dispositive motion, defendant argues that CJA vouchers are not eligible for PPA interest.

der 28 U.S.C. § 1331. Second, if the issues involve a federal question, whether the PPA divests this Court of jurisdiction to entertain a claim for interest.

### 1. Federal Question Basis For Subject–Matter Jurisdiction

Plaintiffs argue that jurisdiction is proper under 28 U.S.C. § 1331, since a federal statute is at issue. Defendant argues that 28 U.S.C. § 1366 applies to exclude this controversy from this Court's jurisdiction. Section 1366 states that "[f]or the purposes of [28 U.S.C. § 1331], references to the laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia." Rather, provisions of law applicable only to the District of Columbia are similar to laws "enacted by state and local governments having plenary power to legislate for the general welfare of their citizens." *Key v. Doyle,* 434 U.S. 59, 68 n. 13, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977).

■ The standard for determining if a law is exclusively applicable to the District of Columbia is as follows:

> When Congress acts as the local legislature for the District of Columbia and enacts legislation applicable *only* to the District of Columbia and tailored to meet specifically local needs, its enactments should—absent evidence of contrary congressional intent—be treated as local law, interacting with federal law as would the laws of the several states.

*District Properties Assoc. v. District of Columbia,* 743 F.2d 21, 26 (D.C.Cir.1984)(emphasis added); *see also Dimond v. District of Columbia,* 792 F.2d 179, 188 (D.C.Cir.1986); *Thomas v. Barry,* 729 F.2d 1469, 1471 (D.C.Cir.1984).

■ An issue requiring construction of the PPA, as it applies to the District of Columbia Courts, invokes federal question jurisdiction. It is clear that the 1998 PPA amendment was enacted by Congress, as the local legislature, addressing specific local needs.[5] Notwithstanding, the PPA, as amended, applies to federal agencies, the Tennessee Valley Authority, the United States Postal Service, and the District of Columbia Courts. As such, it is not a law applicable only to the District of Columbia. There is a distinction between an Act enacted for a purpose which is exclusive to the District of Columbia, and a statutory scheme which applies to the District of Columbia, as well as other entities. To resolve the issues in this case, a court must interpret federal statutory language applicable to federal entities and the District of Columbia Courts. Thus, a determination of when a proper invoice is received will implicate federal rights. Similarly, a determination of whether services performed to meet a governmental obligation constitutes an acquired property or service may implicate federal rights. Accordingly, the issues in this case involve federal questions, which may confer subject-matter jurisdiction in this Court pursuant to 28 U.S.C. § 1331.

---

**5.** The source of Congress' power to enact this amendment indicates that the provision is local in nature. Congress enacted this amendment pursuant to its power under Article I, Section 8, Clause 17 of the United States Constitution to legislate for the District of Columbia. In addition, Congress provided for claims resolution using the laws and regulations governing claims to provide property or services for the District of Columbia Courts, excluding parties seeking relief from the District of Columbia Courts from filing under the Contracts Dispute Act, as required for all other claims under the statute. *See* 41 U.S.C. § 605. The legislative history is also indicative. The House Report states that "[t]he courts have failed to pay more than $5,000,000 owed to court appointed attorneys for indigents, and th[e] provision is intended to discourage nonpayment in the future." H.R. Rep. 105–825 (Conference Report). 105th Cong., 2d Sess. 1120–21 (Oct 9, 1998).

2. Exclusivity of 31 U.S.C. § 3901(d)(2).

■ Defendant also argues, in a footnote, that even if the Court has federal question jurisdiction, plaintiffs' claims must fail because they failed to bring a claim for the unpaid interest under the laws and regulations of the District of Columbia, as required by the PPA. § 3901(d)(2). Plaintiffs counter that under the PPA, which states that a "claim ... *may* be filed in the same manner as claims are filed with respect to contracts to provide property or services for the District of Columbia Courts," they are allowed, but not required to so file. § 3901(d)(2)(emphasis added). Courts have often grappled with whether "may" means may or shall. Shall and may are frequently treated as synonyms and their meaning depends on context. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 n. 9, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995)(citing D. Mellinkoff, Mellinkoff's Dictionary of American Legal Usage 402–402 (1992)). May is most commonly used to indicate that an action is permissive, or in the discretion of the actor. At times, may is used to indicate that *if* an actor chooses a particular course of action he must (or shall or is required to) do so in a particular manner. The Supreme Court noted that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion, but this common-sense principle of statutory construction can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) (internal citations omitted).

In this case, it is the Court's opinion that the disputed language means that if a party wishes to file a claim for unpaid interest, it must do so in the same manner as claims are filed with respect to contracts to provide property or services for either of the District of Columbia Courts. To construe this language otherwise would render the language meaningless. *See Halverson v. Slater* 129 F.3d 180, 185 (D.C.Cir.1997)(*quoting Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981), which states that "[w]e must read the statutes to give effect to each if we can do so while preserving their sense and purpose"). If a party could file a claim in any court with jurisdiction, then there would be no need for the limiting language in § 3901(d)(2). Thus, § 3901(d)(2) must be read to vest jurisdiction over claims for PPA interest against the District of Columbia Courts in the local contracts dispute resolution process, to the exclusion of this Court. *See e.g. A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir.1990)(holding that "if an action rests within the exclusive jurisdiction of another forum the district court does not have jurisdiction regardless of other possible statutory bases for such jurisdiction"); *see also Violette v. Smith & Nephew Dyonics, Inc.*, 62 F.3d 8, 11 (1st Cir.1995) (noting that "where Congress has designated another forum for the resolution of a certain class of disputes ... such designation deprives the courts of jurisdiction to decide those cases").

**B.  Declaratory Judgment Act**

■ Plaintiffs also request declaratory relief. A request for declaratory relief does not confer jurisdiction on this Court. *See, e.g., Continental Bank & Trust Co. v. Martin*, 303 F.2d 214, 215 (D.C.Cir.1962). However, the divestiture of jurisdiction under § 3901(d)(2) only relates to the jurisdiction of this Court to award monetary relief. As such, it does not divest this Court of federal question jurisdiction over

requests for declaratory relief. Notwithstanding, a district court may decline to exercise jurisdiction over a declaratory action, even though subject-matter jurisdiction is proper. *See* 28 U.S.C. § 2201(a); *Brillhart v. Excess, Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

▪▪▪ This Court will exercise its discretion and will not entertain this suit for declaratory judgment. *See Public Affairs Assoc. v. Rickover,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); *Davis v. Bd. of Parole of Dept. of Justice,* 306 F.2d 801 (D.C.Cir.1962). When determining whether to exercise such discretion, district courts analyze several factors of relevance: 1) whether a decree would settle all aspects of the uncertainty or controversy giving rise to the proceeding, *see Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 243, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Hanes Corp. v. Millard,* 531 F.2d 585, 592 n. 4 (D.C.Cir.1976); *Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir.1998); 2) whether a decree would preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal, *see Wycoff,* 344 U.S. at 243, 73 S.Ct. 236; and 3) whether the request for declaratory judgment is an attempt to circumvent exclusive jurisdiction elsewhere, where such relief would be equivalent to monetary damages and the thrust of the suit is to seek money, *see Veda, Inc. v. United States Dep't of Air Force,* 111 F.3d 37, 39 (6th Cir.1997); *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1099 (9th Cir.1990); *Eagle–Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990). Each of these considerations weigh against plaintiffs' request.

Litigation of the remaining issue would result in piecemeal litigation, if the plaintiffs are to remedy their alleged injury. A judgment addressing when interest on CJA vouchers begins to accrue will not result in any immediate payment to plaintiffs. Rather, plaintiffs would still have to file a claim under the District of Columbia's contracts dispute procedure. Defendant could argue that the local system is not bound by this Court's decision or that for some other reason this Court's decision will not result in any additional payment to plaintiffs. Therefore, the litigation here will not result in the termination of litigation regarding this dispute between the parties. Furthermore, plaintiffs can raise all the issues present in this litigation through the District of Columbia's contracts dispute system for resolution of the merits. *See Dizol,* 133 F.3d at 1225 (noting that district courts should use their discretion to discourage litigants from filing declaratory actions as a means of forum shopping). The judgment plaintiffs seek may have a preclusive effect on the presentation of a claim for interest under 31 U.S.C. § 3901(d)(2). As such, this Court would be prejudging and preempting issues in a claim that Congress specifically mandated should be heard in another forum. In the final analysis, it would not be prudent for this Court to expend limited judicial resources to resolve issues which would not fully resolve the plaintiffs' claims. In view of the foregoing, defendant's motion to dismiss is granted.