**3573522 CANADA INC. (f/k/a Nora Beverages, Inc.),**

v.

**NORTH COUNTRY NATURAL SPRING WATER, LTD.**

**Civ.A. No. 02–1416.**

United States District Court, E.D. Pennsylvania.

Oct. 21, 2002.

Chad Rutkowski, White and Williams, Philadelphia, PA, for plaintiff.

Peter Y. Lee, Harris Beach LLP, Newark, NY, Thomas W. Plimpton, Harris Beach LLP, Plattsburgh, NY, for defendant.

*MEMORANDUM*

Dalzell, District Judge.

I.  *Factual and Procedural Background*

In 1987, Nora Beverages, Inc. ("Nora"), a Canadian corporation now infelicitously known as 3573522 Canada, Inc., entered an agreement to supply bottled water to respondent North Country Natural Spring Water, Ltd. ("North Country"), a New York corporation. The agreement contained an arbitration clause:

> The parties agree that all actions, disputes and proceedings relation [*sic*] directly or indirectly to this agreement shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed with the agreement of both parties, in accordance with such Rules.

Appl. for Conf. of Arb. Award, Exh. 2 ¶ 20.

When a dispute arose several years later, Nora instituted arbitration proceedings with the International Court of Arbitration of the International Chamber of Commerce ("ICC Court"). Pursuant to its rules, the ICC Court designated Philadelphia, Pennsylvania as the place of arbitration. *Id.* at Exh. 1 ¶ 2.4. On March 22, 2001, the arbitrators entered an award in Nora's favor. *Id.* at ¶ 6.

Nora filed a petition to confirm the award in the New York Supreme Court, Essex County, but that court dismissed the petition on procedural grounds. *Nora Beverages, Inc. v. North Country Natural Spring Water, Ltd.,* Index No. 553–01, at 3 (N.Y.Sup.Ct.

Mar. 4, 2002). Nora then filed an application for confirmation of the award in this Court.

Before us is North Country's motion to dismiss the application for lack of personal jurisdiction and improper venue. To resolve North Country's venue claim, we must construe 9 U.S.C. § 204 ("Section 204"), the rarely-litigated statute governing venue in actions brought under Chapter 2 of the Federal Arbitration Act. Chapter 2 implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. As we will explain below, we conclude that venue does not lie in this district.[1] Rather than dismiss this action, however, we transfer Nora's application to the Northern District of New York.

## II. *Venue*

The parties agree that Section 204 governs venue in this case. Section 204 provides:

> An action or proceeding over which the district courts have jurisdiction ... may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

The parties have no significant ties to the Eastern District of Pennsylvania apart from the fact that the arbitration occurred here.[2] Therefore, venue is proper in this district only if North Country can establish that the

1. Because we conclude that venue does not lie here, we need not determine whether the respondent is subject to the personal jurisdiction of this Court.

2. The parties appear to have one connection to Pennsylvania. After arbitration proceedings commenced, North Country filed a counterclaim alleging that it had incurred unreimbursed costs in removing Nora-supplied products that did not comply with Pennsylvania labeling laws. As North Country neglected to pay filing fees for the counterclaim, the ICC Court deemed the counterclaim to have been withdrawn as of January 24, 2000. Applicant's Mem. at 4. Although Nora relies on this tie to Pennsylvania in arguing

contract "designated" Philadelphia as the place of arbitration.

Nora argues that the contract did, in fact, designate Philadelphia because it granted the ICC authority to select the place of arbitration, which happened to be the City of Philadelphia. But Nora's argument ignores the difference between (1) a contractual term designating a place of arbitration and (2) a contractual term designating particular arbitrators who, in the nature of things, must hold their proceedings somewhere, be it Philadelphia, Pennsylvania, or Philadelphia, Mississippi. Even if Nora does not grasp this distinction, Congress did when it drafted Section 204. The statute requires parties who wish to ensure venue in the district embracing the place of arbitration (assuming venue would not otherwise be appropriate there) to designate this place in their agreement. Since the contract did not so designate Philadelphia, the plain language of Section 204 leads us conclude that venue does not lie here.

Nora attempts to overcome this result with three arguments. First, it contends that our plain-language reading of the statute would subvert the statutory scheme governing the enforcement of international arbitral awards. Nora invokes Article III of the Convention (which 9 U.S.C. § 201 implements in the United States), which provides:

> There shall not be imposed substantially more onerous conditions ... on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.[3]

that we have personal jurisdiction over North Country, it never suggests that these events would be sufficient to establish venue. In fact, Nora acknowledges that "the underlying contract which was the subject of the arbitration proceedings directly concerned conduct that was to take place in the State of New York (nonpayment of monies by North Country in New York)...." *Id.* at 12.

3. We put aside the question of whether Article III is directed only at the legislatures of signatory nations or is also binding upon courts charged with interpreting domestic legislation, such as Section 204, that implements the Convention.

Nora next notes, correctly, that if Chapter 1 of the FAA (which governs domestic arbitral proceedings) applied here, venue *would* lie in our district. *See* 9 U.S.C. §§ 9–11 ("Sections 9–11") (authorizing venue in the district embracing the place where the arbitration award was entered). It then proposes that to avoid imposing "onerous" conditions on the parties to international arbitration, we must conclude that Section 204 incorporates all venue options available to parties in domestic arbitral proceedings.

We do not agree that our plain-language reading of Section 204 imposes more onerous conditions on the confirmation of international arbitral awards. While it is true that Chapter 1 of the FAA automatically authorizes venue in the district where the arbitral award was entered, Section 204 allows the parties in Chapter 2 proceedings to achieve the same result simply by designating a place of arbitration in their agreement. A straightforward application of Section 204 only disappoints a party, such as Nora, that did not bother to insist on a particular place of arbitration when it entered the agreement, but now wishes to confirm the award in the place where arbitration ultimately occurred. This result is not so onerous that we should disregard the plain meaning of Section 204 in an effort to honor the spirit of Article III.

Second, Nora argues that Section 208 incorporates into Section 204 the venue options available under Chapter 1. Section 208 provides:

> Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States.

This argument is without merit because the venue provisions of Chapters 1 and 2 are plainly in conflict. Sections 9–11 automatically authorize venue in the place where the arbitration award was entered. Section 204 does not. Section 208 therefore directs us to

apply Section 204 rather than Chapter 1's slightly more generous venue provisions.

Third, Nora contends that, in light of the Supreme Court's recent decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000), we should read Section 204 "permissively" and find that venue lies in this district, despite the fact that the 1987 agreement did not expressly designate Philadelphia as the place of arbitration. A closer look at *Cortez*, however, reveals that it offers no reason to jettison a plain-language reading of Section 204. *Cortez* construed the provisions in Chapter 1 of the FAA authorizing venue in the place where the arbitration award was entered. Chapter 1 never expressly authorizes venue in districts that would otherwise be appropriate under the general venue statute, such as the district where the defendant resides. *Cortez* holds that Chapter 1's venue provisions should be read permissively, by which the Court meant that they do not preclude venue in other districts. 529 U.S. at 195, 120 S.Ct. 1331.

Section 204 does not require a "permissive" construction because it expressly offers parties in international arbitral proceedings virtually all of the venue options [4] that Chapter 1 makes available. After *Cortez*, there is only one relevant difference between Section 204 and its domestic counterparts: as we have already noted, the parties in international arbitral proceedings must designate the place of arbitration in their agreement before venue will lie there, assuming venue in that district would otherwise be inappropriate.

### III. *Transfer*

Nora has requested that we transfer this case to the Northern District of New York should we conclude that venue does not lie here. Because we find that it is in the interests of justice to expedite Nora's efforts to confirm its arbitration award,[5] we exercise

---

**4.** Section 9 also allows the parties to confirm an arbitral award in a court specified in the agreement.

**5.** At least from this point on.

our power under 28 U.S.C. § 1406(a) and transfer the application to the Northern District of New York, where North Country maintains its principal place of business.

## IV. *Conclusion*

For the foregoing reasons, we grant North Country's motion to dismiss to the extent that it challenges venue in the Eastern District of Pennsylvania. We also grant Nora's request that we transfer this action to the Northern District of New York.

### ORDER

AND NOW, this 21st day of October, 2002, upon consideration of respondent's motion to dismiss (docket entry # 5), applicant's response thereto, respondent's reply thereto, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The motion to dismiss is GRANTED to the extent it challenges venue under 9 U.S.C. § 204;

2. This action is TRANSFERRED to the United States District Court for the Northern District of New York; and

3. The Clerk of Court shall CLOSE this action statistically.