**PRECISION INVESTMENTS, L.L.C., Children Investment Company, Inc., Stephen R. Plaster, As Trustee of the Robert W. Plaster Trust u/t/d December 13, 1988, Robert W. Plaster Trust u/t/d April 4, 1984, Robert W. Plaster Trust Undated Empire Ranch, Inc., and Stephen R. Plaster, Individually, Plaintiffs–Respondents,**

v.

**CORNERSTONE PROPANE, L.P., Defendant–Appellant.**

No. 24925.

Missouri Court of Appeals, Southern District, Division One.

Nov. 17, 2003.

---

Laurence R. Tucker and Darren K. Sharp, Armstrong Teasdale, LLP, Kansas City, for Appellant.

Todd A. Johnson, Ellis, Ellis, Hammons & Johnson, P.C., Springfield, for Respondents.

Before BARNEY, P.J., PREWITT, J., and GARRISON, J.

PER CURIAM.

This appeal is from the trial court's judgment, following bench trial, awarding compensatory and punitive damages pursuant to the plaintiffs' claims of trespass, ejectment, and unjust enrichment concerning eleven parcels of real estate located in Missouri, Indiana, and Alabama. The defendant, Cornerstone Propane, L.P. ("Cornerstone"), raises six points on appeal, assigning error concerning the measure of damages utilized by the trial court in making its compensatory damage award for trespass, the propriety and the amount of the punitive damage award, and the appropriateness of the trial court's order compelling Cornerstone to remediate what the trial court deemed to be hazardous waste on one of the subject properties. For the reason that the judgment appealed from is not a final appealable judgment, we must dismiss the appeal for lack of appellate jurisdiction.

A brief summary of the underlying facts is sufficient, given our disposition of the appeal. Stephen R. Plaster ("Plaster") was president of Empire Energy Corporation ("Empire Energy") from 1994 to September 1996, having worked for the company, or its predecessor, Empire Gas Corporation, since 1980. Empire Energy was based in Lebanon, Missouri and sold and distributed liquid propane in the Midwest and Southeast regions of the United States.

Empire Energy utilized various "surplus" real estate properties during Plaster's tenure. "Surplus property" was defined at trial as real estate that, due to the acquisition or merger of two retail locations or companies, is no longer used in the operation of the business. In this case, surplus properties often were used to store propane tanks or other personal property of Empire Energy unless or until that property was sold or became useful elsewhere. The tanks or personal property would then be moved off of the surplus property.

Some of these surplus properties were owned by Empire Energy, but many were owned by entities in which Plaster or his family had an interest, including Children Investment Company, Inc., Empire Ranch, Inc., and various trusts, including the 1984 Robert W. Plaster Trust. Each of these entities was a plaintiff in the underlying action and is a respondent herein.

In the summer of 1996, Plaster entered into negotiations to sell Empire Energy to Northwestern Growth Corporation ("NGC"). The objective was for NGC to acquire several propane companies and merge them into a single company to be known as Cornerstone Propane. Empire Energy and NGC reached an agreement

later that year whereby NGC acquired all of the stock of Empire Energy, which became a wholly owned subsidiary of NGC.

Nine surplus properties owned by Empire Energy were sold to Plaster as part of the merger between Empire Energy and Cornerstone. Plaster purchased these parcels under the name of Precision Investments LLC ("Precision"), pursuant to an October 7, 1996 "Asset Purchase Agreement" ("the Agreement"), to alleviate concerns NGC had expressed about environmental liability on those properties. Notably, the terms of the Agreement called for the mandatory referral of any future dispute concerning the properties to binding arbitration.

One of the conditions of the merger was that Plaster would continue with the new company, Cornerstone, as senior vice president of acquisitions. This he did until January 7, 1997, when he was terminated from his position with Cornerstone. There was considerable disagreement at trial concerning what did or did not transpire subsequent to Plaster's termination concerning the surplus properties owned by Plaster or the other plaintiffs. Plaster alleged at trial that on numerous occasions he requested that Cornerstone cease its continued trespass and remove its personal property, primarily consisting of old propane storage tanks, from the surplus properties. Cornerstone, through various representatives, claimed not to have received some of the alleged requests or that the requests they did receive were not sufficiently specific to allow them to remediate any trespass on the plaintiffs' surplus properties. They claimed that upon determining their continued presence on some of the surplus properties was indeed a trespass, they removed their property therefrom in a diligent manner.

The dispute over the surplus properties culminated with the filing of a petition by the plaintiffs on October 30, 1998, which was amended on November 3, 2000 and again on August 15, 2001. In each of these petitions, the plaintiffs advanced claims of trespass, ejectment, and unjust enrichment against Cornerstone arising from Cornerstone's alleged unauthorized use of nineteen surplus properties owned by the plaintiffs.

The first three counts of each petition presented allegations of trespass, ejectment, and unjust enrichment arising from Cornerstone's alleged use of eight of the nine properties sold to Precision pursuant to the Agreement. Subsequent to a motion filed by Cornerstone, and Cornerstone's demand for arbitration to the American Arbitration Association, the trial court filed an order on August 15, 2001 in which it found that "Counts I, II, and III of [Precision's] [p]etition asserts claims arising under [the Agreement]. Accordingly, Counts I, II, and III of [Precision's] [p]etition are hereby stayed pending arbitration in accordance with the Missouri Arbitration Act and the Federal Arbitration Act."

Trial of the remaining counts of the plaintiffs' second amended petition was had on December 3–5, 2001. The trial court entered its judgment, findings of fact, and conclusions of law on March 22, 2002, finding in favor of the plaintiffs on all counts, exclusive of Counts I, II and III, and ordering Cornerstone to pay a sum of $1,247,169.18 in compensatory and punitive damages. The court also ordered Cornerstone to remove any personal property that remained on the contested properties. The only reference in the trial court's judgment to the first three counts, which constituted the entirety of Precision's claims against Cornerstone, was the court's acknowledgment that "[t]he claims of [Precision] were previously stayed pending arbitration by Order of this Court dat-

ed August 10, 2001." The judgment does not adjudicate or otherwise dispose of the claims of Precision. This appeal followed.

We issued an order ("show cause order") to the appellants "to show cause, if any, why the appeal herein should not be dismissed for lack of jurisdiction as an appeal that is not taken from a final, appealable judgment." The impetus for the show cause order, as stated in the order itself, was the fact that this court "only has jurisdiction over final judgments" and that "[g]enerally, a final and appealable judgment disposes of all issues and all parties in the case leaving nothing for future determination." *Ackerson v. Runaway II, Inc.*, 961 S.W.2d 933, 934 (Mo.App. S.D. 1998). We noted that "[a] judgment resolving fewer than all issues is unappealable unless the trial court exercises the authority conferred by Rule 74.01(b)[1]." *Cooper v. Lizotte*, 965 S.W.2d 894, 896 (Mo.App. S.D.1998). Here, we noted, the trial court's judgment does not contain an "express determination that there is no just reason for delay," as required by Rule 74.01(b) when less than all claims or parties are disposed of in a judgment. *see Ackerson* at 934–35; *Culligan Int'l Co. v. H & S Water Enters., Inc.*, 956 S.W.2d 468, 470 (Mo.App. S.D.1997).

■ The parties filed separate responses to the show cause order in which both the plaintiffs and Cornerstone contended that we have appellate jurisdiction over the trial court's judgment. This, of course, is not dispositive of the issue, since we are duty-bound to consider, *sua sponte*, our jurisdiction of an appeal regardless of the position of the parties on the issue relative to each other. *Southard v. Southard*, 105 S.W.3d 560, 562 (Mo.App. S.D.

2003); *See also Childress Painting and Assocs., Inc. v. John Q. Hammons Hotels Two, L.P.*, 106 S.W.3d 558, 561 (Mo.App. W.D.2003). "A prerequisite to appellate review is that there be a final judgment." *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994). Where no such final judgment exists, an appeal of that judgment must be dismissed. *Id.* Having reviewed the parties' response to our show cause order, we have determined that appellate jurisdiction is lacking in this case.

■ The right to appeal is purely statutory in nature. *Cert C Corp. v. Monograms & More, Inc.*, 984 S.W.2d 546, 547 (Mo.App. S.D.1998). Cornerstone acknowledges that while Section 435.440[2] of Missouri's arbitration statute specifically provides for an appeal of an arbitrator's award, we have held previously that Missouri's arbitration statute does not alter the meaning of a final judgment as defined by rule and statute. *See Garwood v. Port Arrowhead Marina, Inc.*, 996 S.W.2d 153, 155 (Mo.App. S.D.1999); *Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.*, 904 S.W.2d 37, 39 (Mo.App. S.D.1995). For this reason, a final judgment must dispose of all parties and issues in a case notwithstanding any provision of Missouri's arbitration statute. *See* Rule 74.01(b); Section 512.020.

■ It also is true, however, that a judgment that disposes of a distinct "judicial unit" when more than one claim for relief is presented or when multiple parties are involved may be considered a final judgment ripe for appeal *if and only if* the trial court makes "an express determination that there is no just reason for delay." Rule 74.01(b). Cornerstone argues, and

---

1. References to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

2. All references to statutes are to RSMo (2000) unless otherwise indicated.

we agree, that the action here involves distinct issues that arise from different facts, transactions, or occurrences such that distinct "judicial units" are involved. *See Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997); *State ex. rel. State Highway Comm'n v. Smith,* 303 S.W.2d 120, 123 (Mo.1957). We also agree with the parties that Counts I, II, and III, representing all of Precision's claims, constituted a distinct judicial unit, rendering the remainder of the plaintiffs' petition amenable to a final judgment of the trial court *provided that* any such judgment contain the express finding required by Rule 74.01(b), namely, that the trial court finds "no just reason for delay." However, no such provision appears in the judgment appealed from, and neither the plaintiffs nor Cornerstone have provided us with any argument suggesting this is not fatal to our jurisdiction of this appeal.

Rather than acknowledge or address the failure of the trial court's judgment to comply with the mandatory provisions of Rule 74.01(b), the parties contend that the trial court lost jurisdiction over Precision's claims when it referred those claims to arbitration. Specifically, in its response to our show cause order, Cornerstone argued that the appeal should not be dismissed because the judgment "disposed of all claims that were pending with the trial court after the trial court referred the other separate and distinct claims to arbitration, such that there were no further proceedings or issues necessary for the trial court to adjudicate."

Arguing that "[a] court that refers a matter to arbitration does not necessarily retain jurisdiction over the matter requiring that the arbitration award be confirmed by that court," Cornerstone relies heavily, as do the plaintiffs, upon *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 120 S.Ct. 1331, 146

L.Ed.2d 171 (2000). The issue in that case was whether the federal district court in the district where an arbitration award is rendered must also be the venue for any subsequent modification, vacation, or confirmation of the award. *Id.* at 195, 120 S.Ct. 1331. The Court held that the venue provisions of the Federal Arbitration Act are permissive, rather than restrictive, leading to the conclusion that any federal district court where venue would be proper, under the federal general venue statutes, for resolving the underlying litigation is also proper for seeking an order to confirm, modify, or vacate an arbitration award. *Id.* Advancing "the reasoning" of *Cortez* here, the parties contend that the trial court lost jurisdiction of the claims of Precision when those counts were referred to arbitration. To hold otherwise would, according to Cornerstone, render the holding in *Cortez* "meaningless." Cornerstone believes it "logical to conclude that if a district court always retained jurisdiction over a matter after it was referred to arbitration, a party would always have to return to that district court to confirm the arbitration award. *Cortez* holds otherwise."

A discussion concerning the effect, if any, the holding in *Cortez* may have upon our jurisdiction here is in our view secondary to a consideration of the precise language used by the trial court in its August 15, 2000 referral order. Specifically, we must determine the effect of the trial court's decision that the counts delineating the claims of Precision were "stayed pending arbitration." This is especially true given that the most the parties are able to argue based upon the holding in *Cortez* is that the trial court did not "necessarily" retain jurisdiction over the counts referred to arbitration. Indeed, this seems to us an appropriately prudent interpretation of the effect of *Cortez* here, and implies that the possibility exists that the trial court could

retain jurisdiction over the claims under certain circumstances. An analysis of the language used in the referral order is thus required.

Cornerstone argues that "[t]he legal term 'stayed' means '[t]he postponement *or halting* of a proceeding, judgment, or the like.' " (quoting BLACK'S LAW DICTIONARY 1425 (10th ed.1999) (emphasis Cornerstone's)). Focusing on the emphasized word "halting," Cornerstone defines "halt" as "discontinue; terminate; to bring to a stop." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 525 (10th ed.1999). Cornerstone contends, based on this definition, that the claims of Precision were irreversibly " 'terminated' and 'stopped' in the trial court, as the trial court referred the claims associated with these properties to arbitration."

■ In response to Cornerstone's characterization of the referral of Precision's claims to arbitration as a once-and-for-all termination of jurisdiction over those claims we note, first, that we are not persuaded that the trial court's use of the term "stayed" compels the conclusion reached by Cornerstone as to its meaning or effect. That a proceeding is "halted," "terminated," or "stopped" does not necessarily mean that it is incapable of being resumed at a later time. Moreover, Cornerstone ignores the obvious and ordinary meaning of the second part of its own disjunctive definition of "stayed," namely, the "postponement" of a proceeding. BLACK'S LAW DICTIONARY 1425 (10th ed.1999). To "postpone" a proceeding is to "delay [it] until a future time; [to] put off" the proceeding. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1024 (1975).

Moreover, Cornerstone's argument concerning the contextual meaning of the language in the trial court's order fails to consider that the claims of Precision were "stayed *pending* arbitration." (emphasis added). The plain and ordinary meaning of the term "pending" is "[n]ot yet decided or settled; awaiting conclusion or confirmation." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 969 (1975). Far from compelling the conclusion that the trial court acted to absolve itself completely from jurisdiction over the claims of Precision, the plain and ordinary meaning of the language it chose in referring the three relevant counts to arbitration reflects an understanding on the part of the court that it would retain jurisdiction over that part of the plaintiffs' petition. Such an interpretation is further buttressed, in our view, by the fact that the trial court did not dismiss the claims of Precision altogether. Neither did the parties seek to voluntarily dismiss the claims of Precision. In short, if Cornerstone's argument that the trial court lost jurisdiction over the claims of Precision by its referral of those claims to arbitration is to be supported, it cannot be by way of an attempt to alter the plain and ordinary meaning of the language the court used to refer those claims.

The foregoing discussion leaves us unconvinced that the trial court's referral of the claims of Precision left it forever without jurisdiction to decide those claims. Accordingly, we have no jurisdiction over this appeal for the simple reason previously stated: the judgment disposing of the remaining claims in the petition does not, on its face, meet the requirements of a final judgment as defined by Rule 74.01(b).

■ It is the desire of this court to resolve appeals on their merits, if at all possible. However,

[t]he final judgment rule is based on the belief that piecemeal appeals are oppressive and costly, and that optimal appellate review is achieved by allowing

appeals only after the entire action is resolved in the trial court. *Wilson v. Hungate*, 434 S.W.2d 580, 583 (Mo. 1968). The requirement that a final judgment be entered before an appeal can be taken is designed to avoid disruption of the trial process, to prevent appellate courts from considering issues that may be addressed later in trial, and to promote judicial efficiency. 4 AM.JUR. 2d *Appellate Review* § 86 (1995). The requirement of finality is thus not a mere technicality; it is essential to the maintenance of a smoothly functioning judicial system. *Id.*

*Blechle v. Goodyear Tire & Rubber Co.*, 28 S.W.3d 484, 486 (Mo.App. E.D.2000).

The appeal is dismissed.