McKEAGUE, J., delivered the opinion of the court, in which COLE, J., joined. MAYS, D.J. (pp. 359-63), delivered a separate dissenting opinion.
OPINION
McKEAGUE, Circuit Judge.
This case poses the question whether a district court has jurisdiction to confirm an arbitration panel’s interim award denying class arbitration. The district court, following guidance provided by this court in a closely related earlier ruling in the same case, determined that the requisite ripeness is lacking and dismissed the motion to confirm for lack of jurisdiction. Because we agree that appellant has failed to demonstrate that it is subject to cognizable hardship if immediate judicial review of the interim award is denied, we affirm.
I. BACKGROUND
Plaintiff-appellant Dealer Computer Services, Inc. (“DCS”) provides computer hardware and software support to automobile dealers. It developed an electronic parts catalog system known as a Computerized Publication Display (“CPD”) that enabled car dealers to display then current automobile parts, prices, descriptive data and parts visualizations. Defendant-appellee Dub Herring Ford, a Mississippi corporation, and sixty-three other originally named Ford dealers are a group of dealerships that were parties to written contracts with DCS for the provision of CPD systems and services. They are also putative class representatives of a class of some 2,470 similarly situated Ford dealerships across the country allegedly aggrieved by DOS’s breaches of the CPD contracts. All of the CPD contracts contained an arbitration provision requiring that any contract-related controversy be submitted to arbitration under the Commercial Arbitration Rules of the American *350 Arbitration Association. Dub Herring Ford, on behalf of the dealers, commenced the arbitration proceedings and sought arbitration as a class action.
In November 2006, the arbitration panel issued its Clause Construction Award, concluding that the applicable CPD contracts permit the present arbitration to proceed as a class arbitration. DCS moved the district court to vacate the clause construction award. The district court denied the motion on May 29, 2007. R. 23, Order; Dealer Computer Services, Inc. v. Dub Herring Ford, 489 F.Supp.2d 772 (E.D.Mich.2007). The district court concluded that it had jurisdiction to review the award even though it was not a final arbitration award, but denied the motion to vacate the award, concluding that the arbitration panel did not exceed its powers or manifestly disregard the applicable law. On appeal, we vacated the district court’s order, holding that DCS’s motion to vacate was not ripe for judicial review and that the district court therefore lacked jurisdiction. Dealer Computer Services, Inc. v. Dub Herring Ford, 547 F.3d 558 (6th Cir.2008) (“DCS-I ”).
Next, in proceedings conducted from August to October 2008, the arbitration panel considered evidence and arguments regarding class certification. In December 2008, the arbitration panel issued its 37-page Partial Final Class Determination Award, denying class certification. DCS moved the district court to re-open the case and confirm the class determination award. Taking its lead from our earlier opinion on DCS’s motion to vacate the interim clause construction award, the district court applied the prescribed three-factor ripeness test. The court determined that the arbitration panel’s denial of class certification did not pose a likelihood of harm to DCS and that denial of immediate judicial review of the interlocutory award would pose no hardship to DCS. R. 43, Order; Dealer Computer Services, Inc. v. Dub Herring Ford, 2009 WL 1508210 (E.D.Mich., May 29, 2009) (unpublished). The district court therefore concluded that the matter was still not ripe and dismissed DCS’s motion to confirm. In its appeal from this ruling, DCS argues that the district court misconstrued our earlier ruling, applied the wrong standard in assessing ripeness, and misapplied the standard that it did apply.
II. APPELLATE JURISDICTION
Although Dub Herring Ford has not moved to dismiss the appeal for lack of appellate jurisdiction, it has questioned DCS’s asserted reliance on the collateral order exception to the final judgment rule of 28 U.S.C. § 1291 as a basis for this court’s appellate jurisdiction. Indeed, the district court’s dismissal order, essentially refusing to finally determine the propriety of the arbitration panel’s class determination award, does not appear to meet the requirements of the collateral order exception. See In re Dow Corning Corp., 86 F.3d 482, 488 (6th Cir.1996) (recognizing that an interlocutory order may be immediately reviewable under the collateral order exception if it: “(1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from the final judgment.”).
In response, however, DCS has correctly noted that appeal is properly taken under 9 U.S.C. § 16(a)(1)(D), expressly allowing appeals from orders confirming or denying confirmation of arbitration awards and partial awards. See Bull HN Information Systems, Inc. v. Hutson, 229 F.3d 321, 327-28 (1st Cir.2000) (applying § 16(a)(1)(D) as permitting appeal from an order denying confirmation of an interim *351 partial award). The district court’s order dismissing DOS’s motion to confirm the arbitration panel’s class determination award is in effect an order denying confirmation of a partial award, appealable under § 16(a)(1)(D). Accordingly, we have jurisdiction to hear this appeal.
III. ANALYSIS
A. Governing Standards
The district court’s determination that it lacked jurisdiction for lack of ripeness is subject to de novo review. DCS-I, 547 F.3d at 560. In our earlier ruling, we summarized the governing standards as follows:
The ripeness doctrine “focuses on the timing of the action.” ... “[It] is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.” ... Ripeness “draw[s] both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.” ... Enforcing ripeness requirements discourages “premature adjudication” of legal questions and judicial entanglement in abstract controversies .... Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely.
The key factors to consider when assessing the ripeness of a dispute are: (1) the likelihood that the harm alleged by a party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits.
Id. at 560-61 (citations omitted). See also Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., — U.S. -, 130 S.Ct. 1758, 1767 n. 2, 176 L.Ed.2d 605 (2010) (“In evaluating a claim to determine whether it is ripe for judicial review, we consider both ‘the fitness of the issues for judicial decision’ and ‘the hardship of withholding court consideration.’ ” (citation omitted)).
The ripeness inquiry is triggered by the fact that the instant interlocutory arbitration award, like the one at issue in our earlier ruling, is not a final arbitration award. A final award deciding the merits of the dealers’ breach of contract claims would clearly be subject to confirmation under the Federal Arbitration Act, 9 U.S.C. § 9.[1] But the subject class deter *352 mination award is clearly not final. In the earlier appeal of the district court’s order refusing to vacate the similarly interlocutory arbitration panel’s clause construction award, we implicitly accepted that the district court had jurisdiction to consider DOS’s motion to vacate the award under 9 U.S.C. § 10 — if it satisfied ripeness requirements. See also Stolt-Nielsen, 130 S.Ct. at 1766 (silently accepting that 9 U.S.C. § 10 represents a proper jurisdictional vehicle, assuming ripeness, for a motion to vacate an interlocutory clause construction award). Here too, the instant partial award, denying the dealers’ motion for class arbitration proceedings, is clearly interlocutory. It merely resolves the procedural question whether the individual named claimants will be able to arbitrate their claims only on their own behalf or, alternatively, on behalf of a nationwide class. It has no impact on the merits of any claim. It follows that DCS must satisfy the ripeness requirements to obtain federal court relief.
B. Finality of Class Arbitration Determination
DCS concedes that the class determination award is an interim award, but argues that it is nonetheless subject to judicial review because it resolves a “separate, discrete, independent, severable issue” and therefore has sufficient “finality.” See Island Creek Coal Sales Co. v. City of Gainesville, FL, 729 F.2d 1046, 1049 (6th Cir.1984), abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000). In Island Creek, the Sixth Circuit upheld the district court’s authority to confirm an interim award that, far from merely deciding a procedural issue, granted injunctive relief to maintain the status quo during the pendency of arbitration proceedings. Specifically, the award “finally and definitively” resolved “a separate independent claim,” i.e., the “self-contained issue” whether a party was required to perform under the contract during the pendency of arbitration. Id., 729 F.2d at 1049. In other words, the interim award directly and profoundly affected the parties’ substantive rights in their contractual relationship, even though it did not finally dispose of all the claims submitted to arbitration. Id.
Here, in contrast, the interim class arbitration determination, albeit a significant procedural step in the arbitration proceedings, has no impact on the parties’ substantive rights or the merits of any claim. The denial of class arbitration proceedings arguably disposes of a discrete, independent, severable issue, but it is a procedural issue — hardly the sort of final decision that warrants immediate judicial review in disruption of ongoing arbitration proceedings. Island Creek is thus distinguishable.[2]
This very distinction is among the reasons why, in litigation (as opposed to arbitration), class certification decisions by the district courts were traditionally not deemed to have the requisite finality to warrant immediate appellate review. See *353 Coopers & Lybrand v. Livesay, 437 U.S. 463, 469-70, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). In 1998, however, Rule 23(f) of the Federal Rules of Civil Procedure was adopted, expressly providing the circuit courts of appeals with discretion to permit an appeal from an order granting or denying class certification. This change was designed to allow the circuit courts “to develop standards for granting review that reflect the changing areas of uncertainty in class litigation.” Fed.R.Civ.P. 23, Advisory Committee Notes, 1998 Amendments, Subdivision (f). In developing such standards, the Sixth Circuit has eschewed any hard-and-fast test, but has recognized that discretionary review should be “rarely granted,” in recognition of “the unfortunately lengthy period necessary to complete an appeal.” In re Delta Air Lines, 310 F.3d 953, 959-60 (6th Cir.2002). Further, among those factors identified by the court as potentially relevant to the exercise of discretion is the “death-knell factor,” i.e., “recognition that the costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered.” Id. at 960. In other words, to the extent immediate review of a class certification ruling may now be permitted under Rule 23(f), it is not because of the ruling’s “finality,” but because of “hardship” that may otherwise result to one side or the other.
Hence, insofar as case law applying Rule 23(f) is relevant, by analogy, to assessment of the district court’s jurisdiction to confirm the arbitration panel’s denial of class arbitration in this case, it does not counsel in favor of a per se rule of appealability because the denial is sufficiently “final.” Rather, it counsels in favor of requiring consideration of the very sort of ripeness factors that the district court did consider in accordance with our recent direction in DCS-I, 547 F.3d at 560-63.
DCS insists the DCS-I ruling expressly contemplated the immediate reviewability of the arbitration panel’s class arbitration determination. DCS relies on the following language from our opinion:
The stay procedures set forth in [AAA Commercial Arbitration Supplementary] Rule 5(d) enable a party to contest an unfavorable decision on class certification in court before commencement of class arbitration and resolution of the merits by the arbitration panel. Thus, if the arbitrators in this case ultimately decide to certify Dealers’ class, which is no certainty, Rule 5(d) would nonetheless provide DCS ample opportunity to obtain judicial review of any arguments it may have against class arbitration, including those challenging the soundness of the arbitration panel’s prior Clause Construction Award. Given this prospective opportunity for judicial review, it does not appear DCS will suffer any material hardship if review is withheld at this preliminary stage of arbitration.
Id. at 562-63 (bold-emphasis added).
DCS construes this language more broadly than warranted. DCS reads the language as reflecting our determination that the motion to vacate the clause construction award was not ripe because DCS would necessarily — i.e., irrespective of outcome — have another opportunity to obtain interlocutory judicial review of the class determination award. As indicated by the highlighted language, however, the contemplated judicial review of the class determination award is clearly contingent on the eventuality of an unfavorable award. Indeed, whether the arbitration panel ultimately decided to certify the class or not, the decision would be interlocutory. An interlocutory award, we made clear, is ripe for judicial review only if the three ripeness factors — i.e., likelihood of harm, hardship, and factual development — are met.
*354 In most cases, an unfavorable class certification decision would ordinarily be expected to create circumstances that would justify the aggrieved side, whether claimants or respondent, in seeking and obtaining judicial review under these ripeness factors. Hence, the court’s discussion of the hardship posed to DCS is couched in terms of an award unfavorable to DCS. Naturally, the hardship posed to a party by a favorable class determination award would not be readily apparent. The cited language does not therefore support the inference urged by DCS that either side would be entitled to judicial review of the interlocutory class determination irrespective of any showing of hardship.
It is because of the importance of the hardship element to the ripeness assessment that this favorable/unfavorable distinction is not merely one of semantics. And it is the hardship requirement that undermines DCS’s argument that because motions to confirm and to vacate are two sides of the same coin, both forms of judicial review should be mutually available. Yes, if Dub Herring Ford and the other dealers had moved the district court to vacate the class determination award under 9 U.S.C. § 10, they may very well have been able to establish the requisite hardship (e.g., in the form of the “death-knell” factor) to justify the exercise of jurisdiction notwithstanding the non-final nature of the award. In that case, yes, the district court would presumably be able to exercise supplemental jurisdiction over “the flip side of the coin,” DCS’s anticipated reciprocal motion to confirm the award. Yet, because the dealers have not moved to vacate the award, DCS, as the winning party, is handicapped in its efforts to obtain judicial review. Pursuant to DCS-I, which has newly been confirmed in material part by the Supreme Court in SiolfNielsen, DCS must meet the requirements of ripeness to trigger federal court jurisdiction.[3]
This result, requiring either a final award or a sufficiently ripe interlocutory award, is consistent with the “national policy favoring arbitration.” Hall Street, 552 U.S. at 588, 128 S.Ct. 1396. It “main-taints] arbitration’s essential virtue of resolving disputes straightaway” and avoids “open[ing] the door to the full-bore legal and evidentiary appeals that can ‘render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,’ ... and bring arbitration theory to grief in post-arbitration process.” Id. (citation omitted). See also Quixtar, Inc. v. Brady, 328 Fed.Appx. 317, 320-21 (6th Cir.2009) (“A district court should not hold itself out as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and ... delaying tactics in a proceeding that is supposed to produce a speedy decision.” (quoting Michaels v. Mariforum Shipping, S.A, 624 F.2d 411, 414 (2d Cir.1980))). Accordingly, because the instant class determination award is undeniably an interim award, DCS has the burden of showing ripeness to establish jurisdiction for judicial review.
C. Ripeness of DCS’s Motion to Confirm
1. Correctness of the Ripeness Standard Applied
The district court granted Dub Herring Ford’s motion to dismiss DCS’s motion to *355 confirm the class arbitration award for lack of ripeness. The court considered the ripeness factors set forth in DCS-I:
(1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage of the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits.
R. 43, Order, p. 3-4 (quoting DCS-I, 547 F.3d at 560). The district court’s determination that the factual record is sufficiently developed to permit judicial review is not challenged. As to the other two factors, however, the court found that DCS could “not establish that it would suffer harm or a hardship if judicial review is denied at this stage of the proceedings.” Id. at 4. The court reasoned that because Dub Herring Ford failed to obtain class certification, the potential harm to DCS involved in defending against class arbitration would never occur. Id. at 5.
The district court’s analysis is faithful to the direction provided in DCS-I, where we observed, in holding that DCS’s motion to vacate the clause construction award was unripe, that the “absence of hardship for DCS at this juncture renders DCS’s motion to vacate the sort of premature adjudication the ripeness doctrine seeks to avoid.” DCS-I, 547 F.3d at 563. The district court even parroted our reiteration of Judge Posner’s colorful admonition that courts should remain “reluctant to invite a judicial proceeding every time the arbitrator sneezes.” Id. (quoting Smart v. Int’l Bhd. of Elec. Workers, Local 702, 315 F.3d 721, 725 (7th Cir.2002)).
DCS contends the district court should not have applied this ripeness test, noting that other circuits apply a less rigid standard and that the Supreme Court itself has applied a two-part ripeness test, sans the likelihood-of-harm factor. The three-factor test set forth in DCS-I is essentially the law of the case and DCS has not presented any persuasive reason to abandon it in favor of any other circuit’s standard. We acknowledge, however, that the Supreme Court, in Stolt-Nielsen, applied a two-factor ripeness test in a context practically identical to the situation faced in DCS-I. Is the two-factor test materially different? If it were applied here, would it produce a different result?
In StolL-Nielsen, the Court reversed a Second Circuit decision. The Second Circuit had ordered that the district court’s order vacating an arbitration panel’s clause construction award be vacated. The Supreme Court ultimately held that the arbitration panel exceeded its powers by imposing class arbitration on parties whose contractual arbitration agreement was silent on the issue. Stolt-Nielsen, 130 S.Ct. at 1768-70. This substantive holding is not relevant to the present appeal. However, the Court had the occasion to consider the ripeness of the motion to vacate the clause construction award. Responding to objection by the dissent, the Stolt-Nielsen majority summarily held the matter was ripe based on two ripeness factors: “the fitness of the issues for judicial decision,” and “the hardship of withholding judicial consideration.” Id. at 1767 n. 2 (quoting National Park Hospitality Assn. v. Dep’t of Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)).
This test is nominally different from the three-factor standard we employed in DCS-I, but in practical effect, the distinction is one without a difference. In StoltrNielsen, the Court focused on the hardship element. The Court observed that “[t]he arbitration panel’s award means that petitioners must now submit to class determination proceedings before arbitrators who, if petitioners are correct, have no authority *356 to require class arbitration absent the parties’ agreement to resolve their dispute in that way.” Id. (emphasis added). The Court went on to hold that it was “clear on these facts that petitioners have demonstrated sufficient hardship.” Id. In other words, the Court found sufficient hardship in the imminent reality that, as a result of the arbitration panel’s ultra vires clause construction award, the petitioners would have to participate in class determination proceedings. Although the Court did not explicitly mention the “likelihood” that the identified hardship would come to pass, the imminence of the hardship was manifestly critical to the Court’s holding, distinguishing the majority’s view of the issue from the dissent’s, which viewed the arbitrator’s partial award as the most “preliminary” decision the Supreme Court had ever approved for immediate judicial review. Id. at 1779 (Ginsburg, J., dissenting).
The facts and procedural posture of the case presented in Stolt-Nielsen are materially indistinguishable from those presented in DCS-I. Yet, what Stolt-Nielsen found to be ripe, we found not to be ripe. In this respect (i.e., the merits of the ripeness determination), the two decisions may be deemed in conflict.[4] What is un *357 portant for present purposes, however, is that the two decisions are substantially consistent in their determinations: (1) that an interim arbitration award is subject to judicial review under the FAA, 9 U.S.C. §§ 9 and 10, only if jurisdictional requisites, including ripeness, are otherwise satisfied; and (2) that the ripeness inquiry necessitates evaluation of the hardship posed to the movant in the event immediate judicial review were to be denied. It is therefore DCS’s burden to identify cognizable hardship — under either standard — to establish its entitlement to immediate judicial review of the class determination award.
2. Correctness of the Ripeness Determination
In challenging the correctness of the district court’s ripeness determination, DCS asserts a different form of harm or hardship than the district court considered. The district court held that the potential harm to DCS involved in defending against class arbitration would never occur and that therefore, DCS had failed to demonstrate that withholding judicial review would pose any hardship. On appeal, DCS acknowledges that it won the class determination battle and is no longer threatened, in this case, by the specter of class arbitration expenses and liability. Adopting a new approach, DCS now contends that the hardship posed by denial of immediate confirmation of the class determination award resides in the (a) postponement of judicial confirmation until after the arbitration panel renders its final award(s); and (b) the denial of repose and certainty of preclusive effect that would accompany a confirmed award.
DCS did not assert this argument in the district court. The issue is therefore forfeited. See In re Hood, 319 F.3d 755, 760 (6th Cir.2003) (“It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.”). A defect in the federal court’s original jurisdiction is an issue that cannot be waived and must be raised sua sponte when noticed. See Ku v. State of Tenn., 322 F.3d 431, 433 (6th Cir.2003). Here, however, DCS failed to carry its burden of establishing that the district court had jurisdiction to consider its motion to confirm the interim award and now seeks to rehabilitate its failed effort based on arguments never made to the district court. To address the merits of DCS’s new appellate arguments would be to permit an undeserved second bite at the apple under circumstances that do not implicate a miscarriage of justice. Yet, even if we consider the merits of the forfeited arguments, the outcome is unchanged.
DCS’s new arguments are only weakly supported. First, DCS argues that its opportunity to obtain judicial review and confirmation of the class determination award may be entirely foreclosed if the one-year *358 period of limitation prescribed by 9 U.S.C. § 9 has run before the arbitration panel issues its final award. Yet, no court could legitimately consider the one-year period to have begun running from the date of the interim class determination award after having denied judicial review for lack of ripeness. If the district court’s dismissal of the motion for lack of ripeness is affirmed, then DOS’s recourse is to seek judicial review after entry of the final award. DCS has neither argued nor cited any authority for the proposition that judicial review of the final award would not afford opportunity for review of earlier issued interim awards integral to the final award. DCS has thus failed to show that withholding of judicial review of the arbitration panel’s favorable class determination award at this stage poses any imminent risk of cognizable harm in this case.
Absent immediate confirmation of the class determination award, DCS further contends, the award lacks the preclusive effect DCS needs to protect it from other claimants’ potential efforts to obtain class arbitration of similar breach of contract claims in other arbitration proceedings. In particular, DCS refers to another pending putative class arbitration proceeding involving similar claims and commenced just four months after the instant arbitration, Fox Valley Ford, et al. v. DCS, in which the claimants are represented by the same counsel as the claimants in this case. DCS contends that counsel for the Fox Valley Ford claimants have made clear their intentions to pursue class arbitration proceedings in that case if the class determination award in this case is not confirmed.
In response, Dub Herring Ford contends that Fox Valley Ford involves dissimilar breach of contract claims. Yet, in any event, we remain unpersuaded that such “collateral hardship” (i.e., potentially incurring expenses in another case) is cognizable in evaluating the ripeness of DOS’s motion for confirmation of an interim arbitration award in this case. In evaluating ripeness, the Supreme Court has recognized that the disadvantages of premature review ordinarily outweigh the burden created by the additional costs of — even repetitive — litigation. See Ohio Forestry Ass’n, Inc. v. Sierra Club, 523 U.S. 726, 735, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). The Ohio Forestry Court thus held that the possibility of potential litigation costs in other cases was not sufficient hardship by itself to justify immediate review of an otherwise unripe matter. Id. at 734-35, 118 S.Ct. 1665. The Court observed that a case-by-case approach, albeit potentially frustrating and inefficient, is the traditional and normal mode of operation of the courts. Id. at 735, 118 S.Ct. 1665.
Further, even if such collateral consequences could be considered “hardship,” DOS’s showing of the likelihood of this harm coming to pass is sketchy and hardly compelling. We note that the Fox Valley Ford case does appear to be on a parallel track. When the arbitration panel issued a clause construction award permitting the Fox Valley Ford claimants to pursue class arbitration, DOS’s motion to vacate the award was assigned to and denied by the same district judge who denied both DOS’s motion to vacate and motion to confirm in this case. See Dealer Computer Services v. Fox Valley Ford, 2008 WL 1837229 (E.D.Mich.2008). DOS’s appeal of that ruling was treated in conformity with our ruling in DCS-I. See Dealer Computer Services v. Fox Valley Ford, 310 Fed.Appx. 749 (6th Cir.2009) (vacating the order of the district court and remanding for dismissal for lack of ripeness). Since then, it appears further proceedings in the Fox Valley Ford case have been held in abey *359 anee pending final resolution of the class certification question in this case. Considering this parallel history and the consistency with which the federal courts have treated both cases, DCS’s suggestion that it is exposed to imminent hardship is not persuasive. The alleged hardship posed by the possibility of unnecessary, duplicative expenses has not been shown to be substantial in amount or likelihood. Nor has DCS shown that there is any substantial likelihood of an inconsistent class determination award in Fox Valley Ford.
In short, the new appellate arguments made by DCS in attempting to carry its burden of showing ripeness — if they are considered at all — are no better than the old arguments the district court rejected. The district court’s order dismissing the motion to confirm for lack of ripeness must therefore be upheld.
IV. CONCLUSION
Despite DCS’s protestations that confirmation should be a simple procedure that would ultimately enhance efficiency in managing and resolving the dealers’ arbitration claims, this very judicial review experience, still pending eighteen months after the arbitration panel’s interim class determination award was issued, and having seemingly accomplished nothing but delay, starkly demonstrates why the courts should be vigilant to safeguard arbitration proceedings from unwarranted judicial interference. For all the foregoing reasons, the district court’s order of dismissal is AFFIRMED.

. The Federal Arbitration Act itself is not jurisdictional. Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 581-82, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). Thus, the availability of confirmation under 9 U.S.C. § 9 is dependent on some other independent jurisdictional basis. Id. Here, federal jurisdiction is premised on the Class Action Fairness Act, 28 U.S.C. § 1332(d), prescribing diversity and amount-in-controversy requirements for class actions. Early in the district court proceedings, the district court ordered DCS to show cause why its initial motion to vacate the clause construction award should not be dismissed for lack of jurisdiction. The court was satisfied by the response. R. 8, Order. Since then, DCS’s showing that the diversity and amount-in-controversy requirements are met has not been challenged. In their appellate brief, the dealers "question" (without specifically challenging jurisdiction) whether the requirements can be met after the class certification denial is finalized. This subsequent development has no impact on jurisdiction. First of all, the class action certification denial has not yet been finalized. Second, the amount claimed in the pleadings when the action was commenced generally controls (as long as the amount was claimed in good faith) and subsequent events which reduce the amount recoverable below the statutory limit do not divest the court of jurisdiction. Charvat v. GVN Mich. Inc., 561 F.3d 623, 627-28 (6th Cir.2009). Hence, we have no reason to question the propriety of the district court’s *352 fundamental exercise of jurisdiction under the Class Action Fairness Act.

. Although ripeness was not expressly addressed in Island Creek, if it had been, the three ripeness factors set forth in Dealer Computer Services, 547 F.3d at 561, would most assuredly have been deemed satisfied. In other words, even though the term "ripeness” was not expressly used to explain why the interim award was deemed subject to confirmation, it was implicitly considered as a factor. See also Hall Steel Co. v. Metalloyd Ltd., 492 F.Supp.2d 715, 719-20 (E.D.Mich.2007) (distinguishing Island Creek and observing that federal courts generally overcome their usual resistance to piecemeal confirmation of interim awards only where there is some compelling need for immediate relief).

. In Stolt-Nielsen, the Court reached a conclusion on ripeness that appears to be at odds with our ripeness ruling in DCS-I. Stolt-Nielsen, 130 S.Ct. at 1767 n. 2. We address the merits of the ripeness analysis below. For present purposes, we note simply that Stolt-Nielsen confirms that judicial review of an interim arbitration award is available only if ripeness is established through the requisite showing of hardship.

. Considering that the Stolt-Nielsen Court implicitly considered likelihood of harm, along with fitness and hardship, as we did in DCS-I, how are we to understand its different "ripeness" determination? The answer may lie in the nature of the hardship identified by each court and the likelihood that that hardship would come to pass. In each case, interestingly, the parties had not expressly argued hardship, so the court had to presume the "asserted” hardship. See Stolt-Nielsen, 130 S.Ct. at 1767 n. 2 (noting that the ripeness issue was not pressed in or considered by the courts below); and DCS-I, 547 F.3d at 561 n. 3 (noting that DCS did not address ripeness in its briefs). The Stolt-Nielsen Court presumed that the petitioners sought to vacate the clause construction award to avoid even the expenses associated with participating in preliminary class determination proceedings, irrespective of whether a class was ultimately certified. Id. at 1767 n. 2. This hardship, the Court observed, was imminent, its likelihood a certainty.
In contrast, we presumed in DCS-I that DCS "sought to avoid the 'harm' of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding.” DCS-I, 547 F.3d at 561. That is, we presumed that DCS was concerned about expenses and risks that would potentially materialize only if and after the arbitration panel, in a later interim award, "conclusively determine[d] that Dealers' claims should proceed as a class arbitration.” Id. Because this hardship was contingent on "future events that may not occur as anticipated, or at all,” we determined that "the likelihood of harm factor strongly weighted] against finding the Clause Construction Award ripe for review.” Id. at 562. Further, because DCS would have a prospective opportunity for judicial review if an unfavorable class determination award were forthcoming, we concluded that DCS would not "suffer any material hardship if review is withheld at this preliminary stage of arbitration.” Id. at 563.
Thus, the difference in the two courts’ ripeness determinations may be attributable not to application of two materially different ripeness standards, but to application of two substantially similar ripeness standards to similar but not identical types of hardship whose imminence or likelihood of occurrence was materially different. In light of this analysis, Stolt-Nielsen does not necessarily undermine the district court's ripeness ruling in this case. Also, in light of this analysis, it becomes apparent that Stolt-Nielsen is not necessarily at odds with our ripeness ruling in DCS-I, but may be distinguishable on the basis of the nature and imminence of the presumed hardship.
In assessing the significance of Stolt-Nielsen 's teaching on ripeness, moreover, it is important to recognize that the majority's entire discussion of ripeness is confined to one footnote. Stolt-Nielsen, 130 S.Ct. at 1767 n. 2. The issue had not been argued by the parties or considered by the courts below. Id. The majority was reluctantly compelled to address the issue at all only because the dissent raised it. The Court had granted certiorari to decide "whether imposing class arbi *357 tration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act.” Id. at 1764. The Court did not grant certiorari in order to clarify the law of ripeness, but to clear up confusion stemming from its earlier decision in Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). The majority refused to be deterred by the dissent’s suggestion that certiorari had been improvidently granted. This explains why the majority's ripeness discussion is summary and dismissive in nature, a fact that counsels against reading the decision’s ripeness teaching more expansively than it deserves. See Levin, Tax Comm'r of Ohio v. Commerce Energy, Inc., - U.S. -, 130 S.Ct. 2323, 2335, 176 L.Ed.2d 1131 (2010) (reversing the Sixth Circuit for having attributed unwarranted significance to an "unelaborated footnote” in an earlier Supreme Court opinion).