**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0107n.06

No. 13-1436

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 06, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| GICU RAUTU, | ) | |
| | ) | |
| **Plaintiff–Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| U.S. BANK, | ) | |
| | ) | |
| **Defendant–Appellee.** | ) | **O P I N I O N** |
| | ) | |

Before:  BOGGS, MOORE, and McKEAGUE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**   The foreclosure crisis has taken a tremendous toll on our country.  Numerous foreclosures have stalled the economy by impeding capital allocation and clouding title on real estate.  The resulting court cases have flooded both state and federal courts, which must resolve these cases expeditiously in order to unwind the individual contractual tangles and, thus, help clean up the greater financial mess.

Gicu Rautu claims that when he purchased a home in January 2008, he was promised a fixed-rate mortgage.  The documents he signed at closing, however, provided for an adjustable-rate mortgage.  Rautu claims that he has been harmed as a result of this alleged bait-and-switch.  His complaint, however, failed to plead fraud with any particularity.  The district court dismissed Rautu's suit for this, as well as a number of other failings.  For the reasons that follow, we AFFIRM that dismissal.

## I. BACKGROUND

Gicu Rautu purchased a home in Birmingham, Michigan, in January 2008. In order to finance his home purchase, Rautu obtained a mortgage from U.S. Bank through Indigo Financial Group. Rautu applied for a fixed-rate mortgage and claims that he was assured that the mortgage would indeed be a fixed-rate mortgage. When he was closing on the purchase and mortgage, however, Rautu signed mortgage documents for an adjustable-rate mortgage. Consequently, he claims to be a victim of a bait-and-switch fraud in which he received a product, an adjustable-rate mortgage, for which he did not bargain. He also alleges that Indigo Financial Group benefitted financially from selling him an adjustable-rate mortgage rather than a mortgage with a fixed rate.

The adjustable-rate note provided for a 7.8% annual interest rate for the first five years of the thirty-year loan-repayment period. At the end of the first five years, in February 2013, the loan's interest rate would effectively float between 7.8% and 13.8%. Rautu claims that he believed he was getting a 7.8% annual interest rate fixed for the entire period of his thirty-year loan. Accordingly, he professes to have been unaware that he was getting an adjustable-rate rather than a fixed-rate mortgage.

Rautu began falling behind on his payments in late 2010 and continued to struggle to make monthly payments in the beginning of 2011. In June 2011, Rautu and U.S. Bank entered into a Home Affordable Modification Program ("HAMP") trial period. After successful completion of the trial period, Rautu and U.S. Bank executed a loan-modification agreement. While this agreement included a greater unpaid balance than Rautu's original loan, the annual interest rate on this agreement was set at a fixed 4.8% for the duration of the loan. Under this

loan modification, Rautu made one payment in September 2011, but has made no subsequent payments.

Instead, Rautu filed suit against U.S. Bank in Oakland County, Michigan, Circuit Court on October 27, 2011. U.S. Bank removed the case to the United States District Court for the Eastern District of Michigan on February 21, 2012. By stipulation of the parties, that action was dismissed without prejudice on April 3, 2012.

Soon thereafter, Rautu filed the present action once again in Oakland County Circuit Court. The complaint, filed on May 31, 2012, raised six counts: (1) fraud and misrepresentation, (2) common-law rescission and/or reformation, (3) quiet title, (4) violation of the federal Truth in Lending Act ("TILA") and Federal Reserve Regulation Z, (5) violation of the Credit Repair Organizations Act ("CROA"), and (6) violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act. The first five counts were asserted against both Indigo Financial Group and U.S. Bank. The sixth count was asserted against only Indigo Financial Group, which the complaint identified as an "expired" corporation "no longer doing business." R. 1 (Compl. Caption, ¶ 7) (Page ID #9). U.S. Bank removed the case to the United States District Court for the Eastern District of Michigan on July 6, 2012, with both federal-question jurisdiction and diversity jurisdiction supporting the removal. U.S. Bank subsequently filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

3

On March 7, 2013, the district court granted the motion to dismiss.[1] The district court provided a comprehensive opinion explaining its reasoning for dismissing each count. *See* R. 11 (Op. & Order Granting Def.'s Mot. to Dismiss ("D. Ct. Op.")) (Page ID #129–42). The district court dismissed Count 1 because Rautu "(i) failed to plead fraud with sufficient specificity, (ii) was unreasonable in relying on [U.S. Bank]'s alleged misrepresentations, and (iii) cannot demonstrate any harm arising from said misrepresentations." *Id.* at 7 (Page ID #135). The district court ruled that, because rescission and reformation are equitable remedies rather than causes of action under Michigan law, Count 2 must be dismissed. *Id.* On Count 3, the quiet-title count, the district court ruled that Rautu's failure to honor the loan agreement sullied Rautu's hands. Consequently, Rautu is barred from entering a court of equity and asking for an equitable remedy due to his unclean hands. *Id.* at 7–8 (Page ID #135–36). According to the district court, the statute of limitations on any TILA or Regulation Z claim, Count 4, has long expired. *Id.* at 9 (Page ID #137). Finally, the district court rejected Count 5, Rautu's claim that U.S. Bank violated the CROA. *Id.* at 9–13 (Page ID #137–41). In doing so, the district court gave three independently sufficient reasons: (1) the CROA does not regulate entities such as U.S. Bank, (2) U.S. Bank did not make a misleading statement to a third party, and (3) the misleading statement was never actually made as Rautu alleges. *Id.*[2]

---

[1]On January 29, 2013, the district court had dismissed Indigo Financial Group from the suit without prejudice in a Stipulated Order. R. 9 (Stipulated Order of Dismissal as to Def. Indigo Fin. Grp., Only.) (Page ID #127). As a result, the district court dismissed the sixth count of the complaint, violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act. *See* R. 11 (Op. & Order Granting Def.'s Mot. to Dismiss ("D. Ct. Op.") at 1–2) (Page ID #129–30). The parties do not dispute that the dismissal of this count was proper.

[2]In his appeal, Rautu does not argue that the district court erred in dismissing Count 5. Consequently, our review will focus solely on Counts 1–4.

On April 5, 2013, Rautu filed a notice of appeal. In his appeal, Rautu argues that the district court made four errors. First, he claims that his fraud claim should not have been dismissed because he pleaded fraud with sufficient particularity, reasonably relied on U.S. Bank's misrepresentations, and was harmed. Second, he contends that the district court misconstrued Michigan law and that rescission and reformation are causes of action under Michigan law, not simply remedies. Third, he contends that the district court's application of the doctrine of unclean hands to bar him from pursuing equitable claims and remedies is overly broad. Finally, he claims that the statute of limitations has not run on his TILA claim, or, in the alternative, that the limitations period should be equitably tolled.

## II. ANALYSIS

We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss and its conclusion that any amendment would be futile. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a 12(b)(6) motion, courts must look only to the complaint and any documents that are referred to in the complaint and are central to the claim. *Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997).

### A. Fraud and Misrepresentation

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) has been interpreted to require that a plaintiff, at a minimum, must provide "the time, place and

contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). To assure that they have satisfied the Rule 9(b) requirements, plaintiffs should strive to specify the statement they contend is fraudulent, identify the speaker, time, and location of the statement, and explain why the statement is indeed untrue or a misrepresentation. *See Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).

Rautu's complaint does not come close to meeting this standard because it lacks any detail regarding the alleged fraud or misrepresentation. Rautu, in his complaint, alleges that "Defendant's representations, both verbal and through their [sic] disclosures, up to and through closing, made material representations to plaintiff regarding the nature of the loan. Defendant intended for plaintiff to rely upon the representations. These representations were false at the time, or made with reckless disregard as to their truth." R. 1 (Compl. ¶¶ 17–19) (Page ID #10). This set of allegations says simply that the defendant[3] made material misrepresentations to Rautu intending for Rautu to rely on them. It does not state when or where the misrepresentations were made. It simply states that they were made during the entirety of the relationship in forming the contract. It also does not state the content of the misrepresentations—any specific statement made by any individual or on any form that is false or misleading. The closest Rautu comes to providing U.S. Bank with any notice of the nature of the charges against it is by stating that "[t]hese representations changed the entire nature of the financing transaction." *Id.* ¶ 20 (Page ID #10).

---

[3]Because Rautu sued both U.S. Bank and Indigo Financial Group, it is not even clear whether the fraud and misrepresentations are alleged to have been undertaken by one defendant, and, if so, which one, or by both defendants. The words "[d]efendant's" and "defendant" are singular while "their" is plural.

Relying on the general allegations in the complaint, a defendant may be able to figure out that this statement is intended to reflect that Rautu "applied for a fixed[-rate] loan," *id.* ¶ 11 (Page ID #9), but "was made the victim of a 'bait and switch' and placed in an Adjustable Rate Mortgage ("ARM") without any prior knowledge." *Id.* ¶ 14 (Page ID #9). While this may provide detail on the nature of Rautu's theory of recovery, it lacks any detail on why Rautu expected to receive a fixed-rate loan. An adequate complaint would explicitly state which oral statements by representatives of the defendant or which written disclosures by the defendant led Rautu to believe that his loan would be a fixed-rate loan. Provided with the time, place, and contents of these statements, U.S. Bank would then have a fair opportunity to reply. Perhaps, U.S. Bank would answer that such statements were never made. Perhaps, it would argue that the statements were later repudiated. Perhaps, it would argue that the statements were not made with the intent that Rautu rely on them. U.S. Bank might even admit the truth of a statement. However, with the complaint as it is drafted, U.S. Bank simply has no concrete statements to which it can reply. It has not been put on notice of the nature of the fraud it is alleged to have committed.

In effect, Rautu's complaint states that he applied for one type of loan—a fixed-rate loan. He was then offered a different type of loan—an adjustable-rate loan. He signed the documents for the latter—perhaps without reading them—and, thus, he alleges that a bait-and-switch had occurred. This set of events may provide a cautionary tale for consumers to examine the loan documents they are signing—particularly for loans of over $400,000—but it does not state a claim for fraud or misrepresentation.

Moreover, U.S. Bank in its motion to dismiss in the district court and in its brief before this appellate panel has pointed out this shortcoming of the complaint, and Rautu has shown no ability to correct it by providing the requisite detail. We conclude that Rautu is unable to remedy this failing, and we affirm the dismissal of Count 1 for failure to plead fraud with particularity.

The district court also dismissed Count 1 of the complaint for two other reasons: (1) it held that Rautu signed mortgage documents that clearly stated that he was getting an adjustable-rate mortgage, and, thus, any reliance by him on previous promises that his mortgage would be for a fixed rate was unreasonable; and (2) it determined that Rautu suffered no damages because his annual interest rate never increased above the 7.8% fixed rate he was expecting to receive. Because we have found that the complaint fails to plead fraud with sufficient particularity, we have no reason to reach the district court's other two bases for dismissing Count 1—lack of reasonable reliance and lack of harm.

**B. Rescission and Reformation and Quiet Title**

The district court, relying on *Yaldu v. Bank of America Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010) (stating that "[r]escission and reformation are not separate causes of action; rather, they are equitable remedies"), dismissed Count 2 of Rautu's complaint for failure to state a claim. R. 11 (D. Ct. Op. at 7) (Page ID #135). Rautu now argues that rescission and reformation are causes of action under Michigan law.

In Count 3, Rautu puts forward a quiet-title claim, requesting that the court use its equitable power to vindicate his rights. The district court determined that Rautu's "failure to honor the terms of the loan agreement" sullied his hands. *Id.* at 8 (Page ID #136).

Consequently, the doctrine of unclean hands "bars [Rautu] from asserting a quiet-title action." *Id.*[4]

This panel does not have to interpret Michigan law to determine whether rescission and reformation are causes of action or merely equitable remedies because Rautu's equitable claims—reformation and rescission and the quiet title cause of action—fail as causes of action. On both Count 2 and Count 3, Rautu requests that the court use its equitable power to change the relationship between himself and U.S. Bank with respect to the home and mortgage. His stated reason for why the court should take this action is because of the fraud and misrepresentation committed by U.S. Bank. *See* R. 1 (Compl. ¶ 24) (Page ID #10) (basing the rescission and reformation counts on the allegation that "[d]efendant materially misrepresented to plaintiffs (sic) the true nature of the financing"); *id.* ¶ 32 (Page ID #11) (arguing that the court should act on the quiet title claim because "defendants' security interest in the home was obtained by fraud in the inducement"). Even Rautu's opposition to the motion to dismiss clearly predicated any equitable remedy found in Count 2 or Count 3 on "the fraud committed by defendants, and request[ed] their respective types of equitable relief." R. 5 (Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 10) (Page ID #117). As we have noted above, however, Rautu fails to allege the nature of this fraud with sufficient particularity and does not provide any factual details on the substance of the misrepresentations, who made them, when and where they were made, or any

---

[4]U.S. Bank made this argument in its motion to dismiss before the district court, and the district court accepted it. Rautu's response to the motion to dismiss failed to address this argument. Having failed to address the doctrine of unclean hands below, he has forfeited the argument. *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 357 (6th Cir. 2010).

other salient facts.  Consequently, Rautu's complaint is inadequate to state a claim upon which relief may be granted.  We affirm the district court's dismissals of Count 2 and Count 3.

## C.  TILA Statute of Limitations

The district court dismissed Count 4 of Rautu's complaint—violation of TILA—as being barred by TILA's statute of limitations.  R. 11 (D. Ct. Op. at 9) (Page ID #137).  Indeed, "any action under [TILA] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  The violation occurred at the time of the alleged bait-and-switch in January 2008, but Rautu did not file his first suit until October 2011.  Consequently, his suit is barred by the statute of limitations.  *See id.*  Today, Rautu argues that he filed suit within a year of discovering the violation and, alternatively, he asks for equitable tolling.  However, Rautu has not alleged when he discovered that his loan agreement included an adjustable, rather than a fixed, rate.  Moreover, he has not alleged what precluded him from discovering this fact from the loan documents he signed.  Finally, in his opposition to the motion to dismiss below, Rautu did not respond to U.S. Bank's argument that his TILA claim was barred by the statute of limitations.  Because in front of the district court Rautu did not argue for a later date of discovery of the TILA violation or that the statute of limitations should be equitably tolled, he has forfeited these arguments.  *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 357 (6th Cir. 2010).  We affirm the district court's dismissal of Count 4.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.