NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0103n.06

Nos. 18-1160/1161

**FILED**
Mar 05, 2019
DEBORAH S. HUNT, Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### 18-1160

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> TRW AUTOMOTIVE U.S. LLC, <br><br> Defendant - Appellant. <br><br> **18-1161** <br><br> TRW AUTOMOTIVE U.S. LLC, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., <br><br> Defendants - Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: SILER, MOORE, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.** This is a combined appeal brought by TRW challenging orders in two separate cases regarding an arbitral decision against TRW and in favor of retired TRW employees and their union. Among other things, the arbitral decision (1) arguably awarded health benefits beyond the scope of the collective bargaining agreement's arbitration clause, and (2) did not award attorney's fees. In the initial action, the defendant TRW successfully moved to compel

arbitration, and the plaintiffs, who succeeded in the arbitration, later sought attorney's fees. The district court in that action entered an order denying TRW's motion to rule that attorney's fees flatly could not be awarded. TRW appeals that order, but we lack appellate jurisdiction to review such a nonfinal order at this time. In a separate action, TRW challenged an aspect of the remedy awarded by the arbitrator that provided relief on the basis of an implicit agreement beyond the scope of the collective bargaining agreement and its arbitration clause. Notwithstanding the extraordinary deference accorded to arbitral decisions, it was error for the district court to enforce that aspect of the arbitral award in this case.

**I.**

TRW Automotive U.S. LLC is an employer engaged in commerce as defined under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 142, 152, and 185. TRW operated an automotive plant in Sterling Heights, Michigan, which closed in 2006. Before the plant closed, TRW entered into a series of collective bargaining agreements with International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("the UAW") and Local 247, the collective bargaining representatives of some of TRW's Sterling Heights employees. The last CBA was negotiated in 2002. After TRW announced its plans to close the Sterling Heights plant on August 17, 2005, TRW and the UAW were not able to negotiate a closing agreement. They instead agreed to extend the 2002 CBA, which remains in effect. The 2002 CBA provided health insurance coverage for active and retired employees. Employees who retired before March 1, 1989 received coverage through a Blue Cross/Blue Shield plan. Employees who retired between March 1, 1989 and January 1, 2003 were also covered under a Blue Cross/Blue Shield plan, with a co-insurance arrangement of 85% company payment and 15% retiree payment. Individual employees paid $100 annual deductibles, while employees and eligible dependents paid

$200 annual deductibles. Employees who retired after January 1, 2003 were covered under a costlier Blue Cross/Blue Shield plan with a co-insurance arrangement of 80% company payment and 20% employee payment. Under that plan, individual employees paid a $200 annual deductible, while employees with eligible dependents paid a $400 annual deductible.[1]

Beginning in 2007, TRW changed the default health insurance carrier to Humana. It was this change that was at the heart of the arbitral decision. Because Humana did not offer a plan that perfectly corresponded to the 2002 CBA's requirements, TRW voluntarily provided its employees with coverage that exceeded the 2002 CBA's requirements, with TRW noting that it was "aware that it had no obligation to do so." Part of that coverage included a Medicare Advantage plan for Medicare-eligible retirees. In its letter announcing the change to Humana healthcare coverage, TRW expressly "retain[ed] the right to amend or terminate these enhance[ed benefits] at any time."

Later, in 2011, TRW sent a letter to its former employees informing them that it "would discontinue providing Medicare-eligible retirees and surviving spouses' healthcare." The letter was presumably based on a provision in the CBA excluding "former employees or retired employees . . . who are or may become eligible for hospital-medical expense benefits under

---

[1] The 2002 CBA provided:

> **32.1.1 Coverage.** The coverage set forth below shall be subject to a co-insurance arrangement of eighty-five percent (85%) Company payment and fifteen percent (15%) employee payment of all applicable hospital-surgical-medical expenses. A deductible amount of $100 per calendar year for employee only and $200 per calendar year for employee and eligible dependents shall be applied to all eligible expenses incurred. However, the maximum out of pocket expense of $500 per calendar year for employee only or $1,000 per calendar year for an employee and eligible dependent shall be applied excluding the deductible amounts indicated . . .

> This coverage remains in effect until December 31, 2002. Employees that retire January 1, 2003, will also be eligible for the 85/15 Blue Cross Blue Shield Plan.

> Effective January 1, 2003, the coverage set forth below shall be subject to a co-insurance arrangement of eighty percent (80%) Company payment and a twenty percent (20%) employee payment of all applicable hospital-surgical medical expenses. A deductible amount of $200 per calendar year for employee only and $400 per calendar year for employee and eligible dependents shall be applied to all eligible expenses incurred. However, the maximum out-of-pocket expense of $1000 per calendar year for employee only or $2,000 per calendar year for an employee and eligible dependents shall be applied excluding the deductible amounts indicated.

Federal law providing such benefits for the public at large" from the coverage provided in Paragraph 32.1 of the CBA. TRW planned to replace the Humana healthcare coverage with Health Reimbursement Accounts ("HRAs") that would be funded at TRW's discretion. The 2011 Letter also stipulated that TRW retained the "right to amend or terminate the HRA."

## A.

In response to the 2011 Letter, the UAW, along with multiple former employees from the Sterling Heights plant (the former employees and the UAW will be collectively referred to as "the plaintiff employees"), filed suit in the Eastern District of Michigan on October 21, 2011 in Case No. 11-cv-14630. The plaintiff employees sought to bring a class action under FED. R. CIV. PROC. 23(a), (b)(1), and (b)(2), with the proposed class "consist[ing] of all persons who retired from TRW at its Sterling Heights plant, including the retirees' dependents and surviving spouses, who are eligible to receive retirement healthcare under the CBAs, excluding any retirees, dependents, and surviving spouses who have legally released their rights to such claims." The complaint asserted that the 2002 CBA obligated TRW "to provide the individual plaintiffs, their eligible dependents and surviving spouses, and others similarly-situated, with lifetime retirement healthcare fully-paid by the employer." Because the transfer of the retirees' healthcare to HRAs in 2011 "material[ly] reduc[ed]" the healthcare benefits, the complaint alleged that it constituted a breach of the 2002 CBA. The complaint also alleged that transferring the retirees to the HRAs violated § 301 of the LMRA and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). Among other types of requested relief, the plaintiff employees sought damages for "any and all losses that [were] incurred as a result of TRW's wrongful conduct," along with attorney's fees.

On January 25, 2012, TRW filed a motion to compel arbitration. In support of its motion, TRW cited Section 4 of the 2002 CBA, arguing that the parties had committed to arbitrate "any disagreement concerning the interpretation or determination of rights and obligations under the CBAs:"

> **4.1 Exclusive Remedy:** The Union and the employees agree that the grievance and arbitration procedures provided herein are adequate to provide fair and final determination of all grievances which may arise out of the employment relationship during the term of this Agreement and that such procedures shall be the exclusive remedy for the enforcement by them of any claim against the Company.

The following section of the CBA defines "grievance":

> **4.1.1 Grievance Defined.** A grievance is any complaint, dispute or controversy in which an employee or the Union claims that the Company has failed to carry out a provision of the Agreement and which involves a question concerning the interpretation or application of or compliance with this Agreement, including any question relating to the rates of pay, hours of work and other conditions of employment of any employee.

In the case of arbitration, Section 4.4 of the CBA provides additional relevant information about the scope of the arbitrator's authority, along with the availability of attorney's fees:

> The impartial arbitrator shall not have authority to alter or modify this agreement. Each party shall bear the expense of his own representatives; and all other expenses of the arbitration, if any, shall be shared equally by the parties. The award of the impartial arbitrator shall be final and binding upon the parties and upon all employees and persons affected, all of whom agree to abide by his award. The expenses of the impartial arbitrator, if any, shall be shared and paid equally by the parties.

The district court granted TRW's motion to compel arbitration on September 30, 2012. Although the plaintiff employees argued that they should be able to litigate their ERISA claims in court, the district court rejected the argument. The court determined that the plaintiff employees "[we]re essentially seeking rights that arise out of the CBA and not an independent ERISA plan" and that the plaintiff employees were therefore required to arbitrate the ERISA claims along with the others. In addition to granting TRW's Motion to Compel Arbitration, the district court

dismissed the case without prejudice, stating that "[a]ny party may file a motion to reopen the case after the arbitration has concluded."

The plaintiff employees appealed the order compelling arbitration on October 2, 2012. However, the arbitrator ultimately ruled in the plaintiff employees' favor on the question of whether TRW breached its contractual duties under the CBA. On September 13, 2013, the plaintiff employees moved to voluntarily dismiss their appeal of the district court's order compelling arbitration, and their motion was granted one week later.

**B.**

The arbitrator described the issue before him as "whether the adoption of the HRA structure as implemented by TRW constitutes a breach of contract." Prior to the arbitration hearing, the parties entered into a stipulation that "[t]he [arbitration] motions will be limited to the issues of contract interpretation and breach." However, the stipulation also stated that "[t]he parties each reserve[d] the right to present further evidence to address issues unresolved by the Arbitrator's decision on the motions, including any factual disputes; ERISA issues; *etc*." The arbitrator issued his decision on May 15, 2013, determining that TRW breached the 2002 CBA when it transferred the retirees from their Humana healthcare coverage to the HRAs. As a result, the arbitrator denied TRW's motion for summary judgment and granted the plaintiff employees' motion for summary judgment for the following reasons.

First, the arbitrator determined that "Paragraphs 32.1.1 and 32.1.2 clearly and unambiguously set forth the coverage that must be provided" by TRW. Section 32.1.3 of the CBA identifies the two optional plans to which each employee may subscribe, and it provides that TRW "will continue to make monthly contributions on behalf of [such] subscribing employees" if they choose to do so. Section 32.1.3 also specifies that if either of the optional plans charges a premium

that "exceeds what is considered a reasonable premium charge for the level of service," TRW "reserves the right to substitute other optional medical plans that provide similar coverage." Because the "right to substitute" was included at the end of the section describing the optional plans, the arbitrator determined that it was limited to that section. In other words, the CBA gave TRW the right to substitute coverage for the optional plans, not for the coverage requirements laid out in Section 32.1.1.

Second, the arbitrator found that the CBA required TRW to "make suitable arrangements for retirees and their eligible dependents to continue receiving such medical plan coverages they had as active employees at the time of their retirement for their lifetimes." The arbitrator based this finding on Paragraph 32.1.4 of the 2002 CBA, which states:

> [The] Company will continue to make suitable arrangements for retired employees to continue such coverages as they had at the time of retirement, subject to the continued availability of such coverages by the carrier. The Company will continue to make monthly contributions on behalf of subscribing retired employees and their eligible dependents towards the cost of such coverage equal to the subscription rate or premium charge for all premiums, but for retired employees enrolled in the coverage described in 32.1.3, not in excess of the amount which the Company would contribute had the retired employees subscribed to the coverages provided in paragraph 32.1.1. The cost of such coverage in excess of the Company's contributions will continue[ ] to be paid by the retired employee. In the event such additional contribution is required, suitable arrangements will be made for the deduction of such contributions of each retired employee who elects this coverage from the monthly retirement benefit payable to him under the Retirement Income Plan by the Trustee there under.

The arbitrator interpreted this section, in conjunction with the other sections of Paragraph 32, to mean that TRW is required to provide the same level of coverage for retirees and their eligible dependents as they received at the time of their retirement, provided that such coverage is still available. If the coverage were not available, then TRW would need to make "suitable arrangements" to substitute a "similar program" for the formerly provided coverage. According

to the arbitrator, nothing in the record "indicate[d] that such coverages [we]re not available; therefore, there [wa]s no necessity for suitable arrangements to be made [here]."

Based on these sections, the arbitrator found that TRW's transfer of the retirees' healthcare benefits to HRAs in 2011 constituted a breach of the CBA. The retirees "have a vested right to lifetime hospital-medical-surgical insurance coverage by TRW," and the CBA does not permit TRW to terminate the coverage requirements laid out in Paragraphs 32.1.1 and 32.1.2. Even if TRW was correct to argue that it "retained the right to make reasonable modifications to the retiree medical plan while still making suitable arrangements to provide meaningful coverage," the arbitrator concluded that TRW's substitution of the HRAs were too costly and "frustrating" for the retirees to amount to such a "suitable arrangement."

The arbitrator examined a section of the CBA that arguably excluded Medicare-eligible retirees from receiving coverage under Paragraph 32.1 of the CBA. The section, Paragraph 32.1.8.1, stated that "[t]he provisions of this Paragraph 32.1 shall not be applicable to former employees or retired employees (and/or spouses) who are or may become eligible for hospital-surgical-medical expense benefits under Federal law providing such benefits for the public at large." The arbitrator determined that the section was not referring to Medicare. Paragraph 32.1.8.1 refers to benefits provided under Federal law that are directed toward the "public at large," whereas Medicare is only available for a subset of the population. In addition, Paragraph 32.1.8.2 states that "if [the laws referenced in 32.1.8.1] permit," the company may "substitute a plan of benefits for the benefits provided by the laws referred to in paragraph 32.1.8.1 and modify the applicable provisions to the extent and in the respects necessary to secure the approval of such substitution from the appropriate governmental authority." The arbitrator noted that it would not be necessary for TRW to obtain any such approval from a governmental authority to offer a plan

other than Medicare to its employees, meaning that the "laws referenced in 32.1.8.1" could not refer to Medicare. The arbitrator did not provide an alternative explanation of what Paragraphs 32.1.8.1 and 32.1.8.2 were referring to, although he speculated that the contract writers might have been anticipating the development of a single-payer healthcare system. Regardless, he rejected an interpretation of Paragraph 32.1.8.1 that would exclude Medicare-eligible retirees from the coverage provided under Paragraph 32 of the CBA.

To remedy TRW's breach of the CBA, the arbitrator ordered TRW to revert the retirees' healthcare coverage back to the Humana coverage that it initiated in 2007. In support of the remedy, the arbitrator noted that "it is recognized that the hospital-medical-surgical plan existing prior to January 1, 2012 was offered to the retirees and, as far as can be determined by the record, accepted by the retirees." The arbitrator therefore concluded that "it is that plan which must be considered as agreed upon as the existing iteration of the coverage required pursuant to the retirees' vested right under Paragraph 32.1 et seq." However, the arbitrator did not grant attorney's fees to the plaintiff employees. The arbitrator instead determined that "each party shall bear the expense of its own representatives," in accordance with Paragraph 4.4 of the CBA.

## C.

We lack jurisdiction to review the order in the appeal of Case No. 2:11-cv-14630, because the order appealed from is not final under 28 U.S.C. § 1291.

In the same action in which the district court ordered arbitration, the plaintiff employees responded to the issuance of the arbitral ruling by filing a motion for attorney's fees and expenses under ERISA, 29 U.S.C. § 1001 et seq, on October 4, 2013. The plaintiff employees also filed a renewed motion for summary judgment on October 24, 2013, claiming that TRW's breach of the CBA also constituted a violation of ERISA. In response, TRW filed a motion to strike on

November 14, 2013, arguing in part that the district court lacked subject matter jurisdiction over the Renewed Motion for Summary Judgment and that the Renewed Motion was untimely.

The district court granted the plaintiff employees' Renewed Motion for Summary Judgment and denied TRW's Motion to Strike. With respect to the Motion to Strike, the district court determined that the plaintiff employees' Renewed Motion for Summary Judgment was not time-barred. TRW argued that the Sixth Circuit has stated that "challenges to an arbitration award are subject to the three-month limitations period provided in the Federal Arbitration Act (9 U.S.C. § 12)." However, the district court concluded that the three-month limitations period was not an issue, as the arbitration award had only addressed the plaintiff employees' breach-of-contract claim. The district court stated that the plaintiff employees' Renewed Motion for Summary Judgment did not amount to a challenge to the arbitration award that would have been subject to the three-month limitations period, because the arbitrator had not decided whether there was an ERISA violation.

The district court then granted the plaintiff employees' Renewed Motion for Summary Judgment, ruling that the plaintiff employees could seek attorney's fees notwithstanding the lack of a specific ruling regarding ERISA in the arbitral award, and notwithstanding the lack of any fee award in the arbitral award. The court held that the plaintiff employees showed that there was "an absence of a genuine dispute of material fact[ ] that . . . TRW violated [the retirees'] rights under ERISA." The district court also dismissed the plaintiff employees' Motion for Attorney Fees without prejudice, stating that the motion was premature because it was filed before the plaintiff employees' ERISA claims were decided. While rejecting TRW's arguments against attorney's fees, however, the district court did not award fees. The plaintiff employees then filed a second motion for attorney's fees, which is currently pending before the district court. TRW appeals the

district court's grant of the plaintiff employees' Renewed Motion for Summary Judgment, arguing that the district court lacked the authority and subject-matter jurisdiction to decide the plaintiff employees' ERISA claims and that its Renewed Motion for Summary Judgment was untimely.

We do not have appellate court jurisdiction over the district court's order. Our jurisdiction is limited to appeals of district court judgments that are "final." 28 U.S.C. § 1291. A mere determination of liability under ERISA, without any further decision about entitlement to relief, does not constitute such a final judgment, nor does a dismissal of a motion for attorney's fees without prejudice. *Morgan v. Union Metal Mfg.*, 757 F.2d 792, 795–96 (6th Cir. 1985); *see also Dixon v. Travelers Indem. Co.*, 630 F. App'x. 518, 520 (6th Cir. 2015). A decision regarding attorney's fees is only final when the district court has determined the amount to be awarded, rather than when the court has determined whether there is liability for attorney's fees or when the court has refrained from deciding the issue entirely. *See Morgan*, 757 F.2d at 795–96. Because the district court declined to decide whether TRW owes attorney's fees for its violation of ERISA, appellate review of the order would be premature.

While there is a "uniform rule" that an unresolved issue of attorney's fees does not defeat the finality of a district court's judgment, that rule justifies appellate review only when the appellant challenges a separate final judgment. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988)). TRW does not identify, much less challenge, any such final judgment supporting appellate court jurisdiction. On appeal, the only part of the district court's order that TRW addresses—apart from the attorney's fee question—is the district court's determination that TRW's breach of the CBA violated ERISA. However, TRW does not contest that determination. TRW rather concedes that it violated ERISA, and argues that the arbitrator had already concluded as much during the arbitration. For these

reasons, we do not have appellate court jurisdiction over the district court's order in Case No. 2:11-cv-14630.

**D.**

We do have appellate jurisdiction over the district court's order denying TRW's motion to partially vacate the arbitration award in Case No. 2:13-cv-12160. The district court's dismissal of TRW's cause of action with prejudice and affirmation of the arbitral award amounted to a final, appealable order under 28 U.S.C. § 1291. *See Preferred Care of Delaware, Inc. v. Estate of Hopkins by and through Hopkins*, 845 F.3d 765, 768 (6th Cir. 2017). Furthermore, 9 U.S.C. § 16(a)(1)(D) provides that "[a]n appeal may be taken from" an order "confirming or denying confirmation of an [arbitral] award or partial award." In this case, the district court denied TRW's motion to partially vacate the arbitral award and affirmed the arbitral remedy, making the district court's order appealable under 9 U.S.C. § 16(a)(1)(D). *See Dealer Comput. Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 350–51 (6th Cir. 2010); *Grain v. Trinity Health, Mercy Health Servs., Inc.*, 551 F.3d 374, 377 (6th Cir. 2008).

On May 15, 2013, TRW filed a complaint in the Eastern District of Michigan, asking the district court to partially vacate the arbitration award. In its subsequent motion for summary judgment, TRW argued that the arbitrator did not arguably construe or apply the CBA when it ordered TRW to reinstate healthcare coverage under Humana. TRW also argued that the arbitrator exceeded his authority by issuing a remedy that was based on an agreement that allegedly happened when TRW "made an 'offer' of enhanced insurance benefits in 2007, [which] the retirees 'accepted' . . . by signing up." TRW claimed that the remedy was outside the scope of the arbitrator's authority, since the arbitration pertained only to issues arising out of the 2002 CBA.

The district court denied TRW's Motion for Summary Judgment on January 16, 2018. It affirmed the arbitrator's award, determining that the arbitrator's remedy was appropriate because it was reasonable to think that TRW and the plaintiff employees had "agreed to modify the [2002] CBA" when "TRW proposed, and [the plaintiff employees] did not oppose, substituting the Humana plan for the Blue Cross Blue Shield plan in 2007." The district court therefore concluded that the arbitrator did not exceed his authority in ordering TRW to restore the Humana healthcare coverage, even though the benefits were more generous that the coverage requirements enumerated in Paragraph 32 of the 2002 CBA. TRW filed this timely appeal on February 14, 2018.

## II.

With respect to the arbitration award, the arbitrator did not arguably construe or apply the 2002 CBA when he ordered TRW to restore the enhanced healthcare benefits that it offered its retirees from 2007 to 2012, and he exceeded his authority by interpreting the retirees' acceptance of TRW's 2007 offer of enhanced coverage as a modification of their prior agreement. The district court accordingly should have partially vacated the arbitral award.

Although the standard for vacating an arbitration award is high, the arbitral remedy ordering TRW to restore enhanced healthcare benefits to its retirees satisfies that standard. An arbitration award is legitimate as long as it "'draws its essence from the collective bargaining agreement,' and is not merely issuing 'his own brand of industrial justice.'" *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). However, an arbitration award should be vacated when a "procedural aberration" occurs during the arbitration process. *Michigan Family Res., Inc. v. Serv. Emp. Intern. Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc). For the

following reasons, the arbitrator's remedy involved two procedural aberrations, rendering it illegitimate.

First, the arbitrator did not arguably construe or apply the language of the 2002 CBA, which expressly describes the healthcare coverage requirements to which retirees and their dependents are entitled. Paragraph 32.1.1 of the CBA provides the healthcare coverage requirements for employees who retired before March 1, 1989, along with the healthcare coverage requirements for the employees who retired between March 1, 1989 and January 1, 2003. For example, Paragraph 32.1.1 describes the co-insurance arrangements that TRW is required to enter with its retirees, and it also specifies the deductible amounts owed by retirees with and without dependents. The language is so clear that the arbitrator described Paragraphs 32.1 and 32.1.2 as "unambiguously set[ting] forth the coverage that must be provided" by TRW. Yet, the arbitrator ordered TRW to provide coverage that exceeded the requirements spelled out in the "unambiguous[ ] language" of the CBA. The arbitrator did so based on his judgment that TRW "substituted a somewhat enhanced hospital-medical-surgical plan administered by Humana" in 2007 for the one set forth in Paragraph 32.1.1 of the 2002 CBA, and as a result, "such policy became the accepted standard of performance by both TRW and the beneficiaries."

By his own admission, the arbitrator's reasoning therefore disregards the plain language of the CBA, instead relying on TRW's decision to enhance healthcare benefits in 2007 as a justification for the remedy. We have recognized that arbitral decisions that are "untethered to" the "terms of the agreement" at issue may constitute illegitimate procedural aberrations, if they fail to "arguably constru[e] or apply[ ]" the agreement's language and therefore "cast doubt on whether the arbitrator indeed was engaged in interpretation." *Michigan Family Res., Inc.*, 475 F.3d at 753. That is precisely what happened here. The arbitrator was charged with interpreting the

2002 CBA and ordering a remedy on that basis. Nonetheless, the arbitrator determined that the parties had entered a modification of the 2002 CBA in 2007 and therefore ordered a more generous remedy than what would have been required under the clear terms of the CBA.

The arbitrator's reasoning is similar to the reasoning from other arbitration awards that were vacated because the arbitrator did not arguably construe or apply the contract at issue. For example, in *Demotic Corp. v. Int'l Union, United Auto. Aerospace, & Agr. Implement Workers of Am. (UAW)*, the Western District of Michigan vacated an arbitration decision that ordered an employer to pay insurance benefits to employees for up to six months after their voluntary layoffs, despite the parties' agreement that the "clear terms of the CBA" only required three months of coverage. 635 F. Supp. 2d 662, 667 (W.D. Mich. 2009). The arbitrator justified his decision in virtually the same way as the arbitrator in this case: he determined that the employer's past practice of providing more generous insurance coverage than the CBA required set a precedent that effectively overrode the terms of the CBA. *Id.* at 667–68. The district court vacated the arbitral decision, in part because the arbitrator disregarded the clear language of the relevant CBA and thereby "eschew[ed] genuine interpretation and instead order[ed] the outcome which he considered more just." *Id* at 679. Similarly, in *Liberty Nursing Center of Willard, Inc. v. United Food & Commercial Workers Union Local 911*, the Northern District of Ohio vacated an arbitration award that disregarded clear language in a CBA specifying how much an employer could charge for dental and vision insurance. 525 F. Supp. 2d 933, 937–38 (N.D. Ohio 2007). The district court did so because the "arbitrator [ ] was not even arguably construing the contract," which was evident from the arbitrator's refusal to follow the clear "numerical language of the contract." *Id.* at 937.

Second, to the extent that the arbitrator attempted to justify his remedy by claiming that the parties modified the terms of the 2002 CBA in 2007 when the retirees accepted TRW's offer of

enhanced healthcare benefits, the arbitrator exceeded the scope of his authority. When an arbitrator "resolv[es] a dispute not committed to arbitration," he "act[s] 'outside his authority'" and commits a procedural aberration. *Michigan Family Res., Inc.*, 475 F.3d at 753. While the 2002 CBA granted the arbitrator the authority to resolve "any complaint, dispute or controversy" arising from a dispute about TRW's "fail[ure] to carry out a provision of the [CBA]," it also expressly provided that "[t]he impartial arbitrator shall not have authority to alter or modify this agreement." Furthermore, Paragraph 4.1.1 expressly restricts the arbitrator's authority to resolving "question[s] concerning the interpretation or application of or compliance *with this Agreement*." In light of this language, the arbitral decision should have been entirely based on the 2002 CBA, rather than on a subsequent agreement between the parties.

The arbitrator's decision to base the remedy on the 2007 Humana plan that "was offered to the retirees and . . . accepted by the retirees" therefore exceeds the scope of his authority. *Dematic Corp.* involved a CBA with a similar limitation on the arbitrator's ability to modify the contract, and the district court concluded that the arbitrator "exceeded her authority" by effectively re-writing the terms of the agreement. 635 F. Supp. 2d at 673. We similarly determined that an arbitrator exceeded his authority because his award was based on a 2002 CBA, even though the parties had submitted a grievance based on an earlier CBA. *Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 415–16 (6th Cir. 2008). The arbitrator in this case formulated a remedy based on an agreement that the parties allegedly reached in 2007, despite the fact that the 2002 CBA was the only agreement that the arbitrator had the authority to interpret and apply. In so doing, the arbitrator overstepped the bounds of his authority.

The arbitrator did not arguably construe or apply the 2002 CBA when he ordered TRW to reinstate the enhanced healthcare coverage that it began providing in 2007, and he exceeded his

authority by determining that the parties modified the terms of the 2002 CBA.  For these reasons, the district court erred by affirming the arbitrator award, rather than vacating the remedy as an illegitimate procedural aberration.

## III.

The order of the district court affirming the arbitrator's remedy is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** This case illustrates the difficulty of according appropriate deference to an arbitrator's decision. It is easy enough to say that we must affirm an arbitrator's decision so long as it was not "so untethered from the agreement that it casts doubt on whether he was engaged in interpretation." *Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 754 (6th Cir. 2007) (en banc). Perhaps it is sometimes less easy to apply this standard, but apply it we must. Unfortunately the majority did not do so here. Rather, it substitutes its judgment where the arbitrator's ought to remain. Therefore, I must dissent.

Of course, the majority does not say it ignores the standard of review. It begins Part II of its opinion by emphasizing the deference we give to arbitrators and asserts that an arbitral award is to be overturned only when a procedural aberration occurs. It then attributes to the arbitrator procedural aberrations of two types: failure arguably to construe or apply the language of the Collective Bargaining Agreement ("CBA") and actions in excess of the arbitrator's authority. The problem is that the procedural aberrations identified by the majority are not as they are characterized. What the majority claims are procedural flaws are, in fact, substantive criticisms of the arbitrator's contractual interpretation—precisely what we must respect, even when it is "nothing more than error." *Mich. Family*, 475 F.3d at 756.

For example, turning first to the assertion that the arbitrator was not arguably construing or applying the CBA, the majority says that the arbitrator's order to provide the 2007 Humana plan was "based on [the arbitrator's] judgment" rather than the CBA itself. Maj. Op. at 14. The majority seems to be saying the arbitrator was applying "his own brand of industrial justice" when he ordered TRW to revert to the 2007 Humana policy. *See United Steelworkers of Am. v. Enter.*

*Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). That is at best an uncharitable reading of the arbitrator's decision, however.

The reasoning supplied by the arbitrator was, in fact, expressly grounded in the terms of the CBA. The arbitral award first considers TRW's obligations under the collective bargaining agreement and determines that TRW must provide hospital-medical-surgical insurance to the retirees. R. 1-4 (13-cv-12160) (Arb. Op. at 12–23) (Page ID #142–53). Next, it determines that TRW, "*acting pursuant to its obligations under the collective bargaining agreement,*" substituted the Humana plan for the original Blue Cross/Blue Shield plan and by doing so modified the terms of the CBA. *Id.* at 23 (Page ID #153) (emphasis added) ("[T]he [2007 Humana plan] was offered to the retirees and, as far as can be determined by the record, accepted by the retirees. Therefore, it is that plan which must be considered as agreed upon as the existing iteration of the coverage required *pursuant to the retirees' vested right under Paragraph 32.1 et seq.*" (emphasis added)). Plainly this analysis is grounded in and interpreting the CBA. Further, the arbitrator's modification theory distinguishes this case from those cited by the majority, such as *Dematic Corp. v. UAW*, 635 F. Supp. 2d 662 (W.D. Mich. 2009). *Dematic* reversed an arbitrator who considered the parties' prior course of dealing and alleged oral agreements to overrule the clear language of the contract. *Id.* at 678. Here, though, the arbitrator's theory was that the contract itself was modified by the 2007 letter, and so consideration of the letter is interpretation of the contract.

The majority's conclusion that the arbitrator exceeded the scope of his powers is similarly flawed. The CBA says that the arbitrator "shall not have authority to alter or modify" the CBA and restricts the arbitrator's authority to questions "concerning the interpretation or application of or compliance with" the CBA. R. 8-2 (11-cv-14630) (CBA at 15, 19) (Page ID #71, 73). From this the majority concludes that the arbitrator's reference to the 2007 Humana plan exceeded his

authority. The problem with the majority's conclusion is that the arbitrator did not modify the contract; rather, he concluded that the parties modified the contract. Similarly, the arbitrator did not look outside the contract when he referred to the 2007 Humana plan; rather, he concluded that the 2007 Humana plan became part of the contract via the parties' modification. And again, this feature of the arbitrator's decision—that the parties modified the contract—distinguishes this case from the cases cited by the majority.

Clearly the arbitrator was engaging in contract interpretation, although perhaps not as the majority would have. In the end, though, "the arbitrator's remedy is related to his interpretation of the CBA and necessarily flows from his finding" that the 2007 Humana letter was an accepted offer to modify the CBA. *See Equitable Res., Inc. v. United Steel Workers Int'l Union*, 621 F.3d 538, 553 (6th Cir. 2010). Therefore the arbitrator's decision must be upheld, and I must dissent.

One point remains that is worth emphasis: this decision is of very limited effect. This ruling does not affect the arbitrator's holding that "retirees have a vested right to lifetime hospital-medical-surgical insurance coverage by TRW. There is no language giving TRW the right to terminate the coverages of Paragraph 32.1 et seq. for any retiree or surviving spouse or eligible dependent." R. 1-4 (13-cv-12160) (Arb. Op. at 22) (Page ID #152). The majority's judgment applies only to the arbitrator's finding that the 2007 Humana plan "must be considered as agreed upon as the existing iteration of the coverage required pursuant to the retirees' vested right under Paragraph 32.1 et seq." *Id.* at 23 (Page ID #153). Any remedial action taken in light of the majority's opinion ought to bear this in mind.